**CITY OF CRYSTAL CITY, Appellant,**

v.

**CRYSTAL CITY COUNTRY CLUB,**
**Appellee.**

**No. 7403.**

Court of Civil Appeals of Texas,
Beaumont.

Nov. 2, 1972.

Motion for Rehearing Overruled
Nov. 22, 1972.

Pat Maloney, San Antonio, for appellant.

Jack Ware, Uvalde, for appellee.

STEPHENSON, Justice.

This is an action brought by the Crystal City Country Club, a corporation, to secure

an injunction restraining the City of Crystal City from denying the members of Country Club access to the facility known as the Crystal City Country Club. The City filed a suit in trespass to try title and under the Uniform Declaratory Judgments Act for determination of its rights under a lease held by Country Club from the City. Trial was before the court and judgment was rendered granting Country Club a permanent injunction, finding a valid lease between the parties, and denying all other relief. The trial court made findings of fact and conclusions of law.

The City's first two points of error are that the trial court erred in concluding that the lease in question was supported by a valuable consideration and that City was estopped to deny the validity of the lease. The record in this case shows the land in question is a part of a larger tract acquired by City from the United States Government on March 24, 1949. On July 8, 1949, City passed an ordinance granting Country Club a three-year lease on a swimming pool, building, and a tract of land estimated to be about two acres. This ordinance recited a consideration of $35.00 per month. Then, on July 3, 1956, City adopted the ordinance in question authorizing the mayor to execute a thirty-year lease with Country Club covering a tract of land approximately 240 by 212 feet in size. The ordinance contained this recitation: " . . . and the consideration shall be that the Lessee shall occupy said premises and use the same, and at the termination of said lease to return the same to the City of Crystal City."

A lease dated the "—— day of July 1956" was executed which contained this provision:

"The Crystal City Country Club, Lessee, agrees to use and occupy said premises and keep the same in possession during the tenure of said lease, and at the termination of said agreement to return possession of said property to the City of Crystal City, it being understood that there is a building located on said property which has heretofore been purchased by the Lessee being understood that they shall have the right to remove said building, if in existence, at the termination of this lease contract."

The testimony showed that the land in this second lease was a part of the land covered by the first lease and that the building mentioned above was a long barracks-type frame building that had been converted into a clubhouse which included a dining room and a ballroom. It was estimated that Country Club spent $25,000 getting the building in shape for club use. Country Club built a new swimming pool at a cost of $7,500 and built a nine-hole golf course on land surrounding this leased land at a cost of about $40,000. The golf course was open to the public for use by the paying of a green fee. The arrangement continued for a few years until Country Club ran into hard times and the golf course was turned over to City in its entirety. The clubhouse was closed down and a youth club began to use the facilities. In 1968, a fire almost completely destroyed the clubhouse and its contents. About eighteen months later, a concrete slab was roofed over as a cabana area with a room at the end for a golf shop, about 30 feet square in size. Those are the improvements now existing on the leased premises. The application for this injunction was precipitated when City put padlocks on the door to these premises.

■■■■ It is elementary contract law that sufficient consideration for a contract may consist of either a benefit to the promisor or a detriment to the promisee, and that it is not necessary for a contract to be supported by a pecuniary consideration. It is apparent that both parties were well aware of the use to which these leased premises would be put. The uncontroverted evidence shows that Country Club expended some $40,000 building a golf course on the land surrounding the leased premises,

which had been turned over to the City in its entirety. This golf course was available for use by all of the citizens of this City and no membership in the Country Club was required. The evidence also shows that Country Club built a new swimming pool at a cost of $7,500 which would become City's property at the end of the lease. All of this was sufficient consideration for the execution of this lease.

An additional reason for upholding the validity of the lease is that City was estopped to deny the validity of this lease agreement. City was acting in its proprietary capacity, as distinguished from governmental capacity, in its dealings with Country Club in executing the lease in question. In such capacity (proprietary), a city can make a contract, under authority of legislative enactment, in all things as an individual or private corporation. City of Big Spring v. Board of Control, 404 S.W. 2d 810 (Tex.1966). The Supreme Court of Texas established the rule many years ago, which has been consistently followed:

"The underlying test is whether the act performed by a city is public in its nature and performed as the agent of the State in furtherance of general law for the interest of the public at large, or whether it is performed primarily for the benefit of those within the corporate limits of the municipality." City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, 261 (1944).

City gave Country Club a lease of the premises and then did nothing while Country Club spent the large sums of money detailed above to improve the leased premises. Under these circumstances, City is estopped to deny the validity of that lease agreement. See: Boiles v. City of Abilene, 276 S.W.2d 922 (Tex.Civ.App., East-land, 1955, error ref.); Moore v. Meyers, 282 S.W.2d 94 (Tex.Civ.App., Fort Worth, 1955, error ref. n. r. e.); City of Nederland v. Callihan, 299 S.W.2d 380 (Tex. Civ.App., Beaumont, 1957, error ref. n. r. e.); Pitzer v. City of Abilene, 323 S.W.2d 623 (Tex.Civ.App., Eastland, 1959, no writ); and City of Big Spring v. Board of Control, 389 S.W.2d 523 [Tex.Civ.App., Austin, 1965, affirmed 404 S.W.2d 810 (1966)].

City's last point of error is that the trial court erred in holding that the ordinance of 1956 was a legal action within the powers of the City. The 1949 deed to the City contained this provision: ". . . for the use and benefit of the public, on reasonable terms and without unjust discrimination . . . ."

City argues that the record in this case clearly shows a concerted, planned and effective exclusion of Mexican-Americans from the use of their own land, thereby violating the Civil Rights Act. The evidence shows the population of Crystal City is at least 85% Mexican-American and that none of them had ever been members of this Country Club. The trial judge found as a fact that although the evidence did not disclose that any Latin-Americans or Negroes belonged to the Country Club, that such Club did not at any time refuse membership to any applicant because of race or color and that the evidence did not disclose any intent on the part of the members of Country Club to refuse membership because of race or color. There is no point of error challenging that finding of fact. This court has made a careful study of the statement of facts and such finding has support in the evidence. This point is overruled.

Affirmed.