IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0890
════════════
 
City of Galveston, 
Petitioner,
 
v.
 
State of Texas, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued February 
16, 2006
 
 
Justice Willett, joined by Chief Justice Jefferson, Justice Hecht, and Justice Wainwright, dissenting.
 
Much about 
this case is novel. We have found no instances where Texas has sued one of its 
cities for money damages. And this Court has never before said legislators 
rather than judges must determine the existence vel non of court-created 
immunity. From the start and whatever the outcome, this case was destined to be 
precedent-setting.
The Court 
makes the best arguments that can be made for rejecting “State v. City” suits, 
but I remain unpersuaded and respectfully dissent. I agree with the court of 
appeals that the State’s immunity cannot be turned against the State itself.
The crux of 
my disagreement is simple: The Court says only legislative consent can abrogate 
a city’s immunity no matter what, even when the plaintiff is the State, and I 
believe a city’s immunity is nonexistent when the plaintiff is the State. Waiver 
presupposes that there is something to waive, and there is no need to waive what 
does not exist.
Today’s case 
may be unheard-of, but in my view the principles underlying Texas immunity law 
coupled with our relevant case law favor the State’s position: the State’s 
immunity cannot bar a suit by the State itself in its own courts.
I. Determining the 
Existence and Boundaries of Common-Law Immunity Is a Judicial 
Responsibility
 
The Court 
urges that disputes like this one are “more suited to the Legislature than the 
courts,”[1] but less than a year ago in 
Reata we held that “it remains the judiciary’s responsibility to 
define the boundaries of the common-law doctrine [of sovereign immunity] and to 
determine under what circumstances sovereign immunity exists in the first 
instance.”[2] That is no less true today 
than it was eight months ago.
The Court is 
undoubtedly correct that disputes between municipalities and the State have 
historically been resolved “by political rather than judicial means,”[3] but that is only because 
the State, for whatever reason(s), never forced the issue via litigation. As a 
society we are fortunate that countless would-be litigants heed President 
Lincoln’s admonition to “compromise whenever you can” and resolve disputes 
peaceably short of litigation,[4] but when lawsuits erupt, it 
remains the judiciary’s solemn duty to adjudicate them.[5] The Court says only 
legislators should abrogate immunity, but punting to the Legislature itself 
constitutes abrogation—our own. This Court has repeatedly held that “sovereign 
immunity is a creature of the common law and not of any legislative 
enactment.”[6] Before tackling 
waiver, there is an antecedent question here: whether governmental immunity even 
exists in a case like this. This Court created governmental immunity; this Court 
delineates its terms (absent legislation); and this Court must decide whether it 
exists in such cases. The Legislature’s focus is critical but confined; its role 
is limited to waiving pre-existing common-law immunity.[7] Obviously, if the 
Legislature had spoken statutorily to today’s issue, we would dutifully follow 
the Legislature’s wishes, but it has not. And the Legislature can certainly 
codify any disagreements with what we say. But however uncommon and however 
unwelcome, the question is now squarely presented, and as we recognized in 
Reata, it is this Court’s duty to squarely decide it.[8]
It is true, 
as we reaffirmed in Wichita Falls State Hospital v. Taylor, that “the 
Legislature is better suited to balance the conflicting policy issues associated 
with waiving immunity,”[9] but this maxim presupposes 
that immunity in fact already exists and does not suggest that courts are 
ill-equipped to determine its threshold existence.[10] Whether and to what extent 
to waive common-law immunity are primarily legislative judgments; whether there 
is anything to waive is a judicial judgment. To say that waiver of sovereign 
immunity is best left to the Legislature does not mean that every assertion of 
immunity by every governmental unit is valid and that courts are powerless to 
hold otherwise. As we recently stated in Reata, “Sovereign immunity is a 
common-law doctrine that initially developed without any legislative or 
constitutional enactment.”[11] Far from a judicial 
incursion, and as we held just 245 days ago in Reata, it is incumbent 
upon the judiciary to delimit its boundaries and decide whether it exists in the 
first place.[12]
Accordingly, 
while the Court notes “the political nature of all the parties, and the 
sensitivity of these intergovernmental issues,”[13] I believe that the issue 
of the existence of governmental immunity vel non is not judicially 
unmanageable, but properly before us as the institution that recognized 
governmental immunity in the first instance. The existence and scope of that 
court-created immunity are front and center, and I see no prudential or 
jurisdictional impediment to deciding them.
II. States Possess 
Inherent Sovereignty and Inherent Immunity; Cities Possess Neither
 
The State of 
Texas, of course, is a stand-alone sovereign entity.[14] While the States forfeited 
certain attributes of sovereignty when they entered the federal system, they 
retained “a residuary and inviolable sovereignty,”[15] and central to that 
preserved sovereignty is “‘the States’ traditional immunity from private 
suits.’”[16] Such immunity is an 
inherent attribute of sovereignty. By contrast, the City of Galveston is a 
political subdivision of the State,[17] and as we held 60 years 
ago, municipalities have no sovereignty apart from the state,
are 
creatures of our law and are created as political subdivisions of the state as a 
convenient agency for the exercise of such powers as are conferred upon them by 
the state. They represent no sovereignty distinct from the state and possess 
only such powers and privileges as have been expressly or impliedly conferred 
upon them.[18]
 
The United 
States Supreme Court holds the same view, declaring, “Ours is a ‘dual 
system of government,’ which has no place for sovereign cities.”[19] Leading legal commentaries 
agree that under our constitutional framework, “municipalities, unlike states, 
are not sovereigns.”[20] The equation is simple and 
well-established: there is no inherent immunity absent inherent sovereignty.[21] Or as one Texas court 
plainly put it, “a city has no sovereignty of its own and likewise no immunity 
of its own . . . .”[22]
III. A 
City’s Governmental Immunity Is a Common-Law Extension of the State’s Inherent 
Sovereign Immunity[23]
 
This Court in 
1884 articulated the general common-law rule of “governmental immunity” for 
municipalities, holding that the State’s sovereign immunity would protect cities 
when performing public functions on behalf of the State but not when performing 
“proprietary” functions.[24]
In the 
intervening 123 years, we have repeatedly held that a city has no immunity of 
its own but is afforded the State’s immunity when acting as the State’s agent 
and performing governmental functions for public benefit.[25] The City dismisses as a 
“semantic ruse” the argument that the City is an “agent” of the State and that 
its immunity is “derivative.” If this is an artifice, it is a well-settled one, 
representing this Court’s uniform view throughout the nineteenth,[26] twentieth,[27] and twenty-first 
centuries.[28] This derived-immunity 
principle is the accepted view among legal commentators, too,[29] as well as numerous Texas 
courts of appeal.[30]
IV. A 
City’s Derivative Immunity Thwarts Suits Brought by Private Parties, Not Suits 
Brought by the State Itself
 
Since cities 
possess no free-standing sovereignty and instead borrow the State’s, it is 
conceptually untenable to allow a city, a legal and geographical subdivision of 
the State, and subject to State control, to assert governmental immunity against 
the sovereign that controls it.[31] As one leading treatise 
observes: 
A 
municipality derives its general tort immunity from the state because it is 
deemed to act as the state’s arm or agent when performing governmental 
functions. Therefore, it would be illogical to allow a municipality sued by the 
state to assert its immunity against the very source of that immunity.[32]
I agree. A 
necessary corollary to the notion that cities borrow their common-law immunity 
from the State, a notion rooted in basic Texas immunity law, is that a city 
cannot wield the State’s own immunity against the State itself. It is indeed 
mystifying that the State’s immunity could be used to undermine the State’s 
sovereign interests.
It also 
merits mention that two other state supreme courts have reasoned that the 
derivative nature of a municipality’s immunity prevents cities from asserting 
immunity against a tort claim brought by the State.[33] The Maryland Supreme Court 
held that “the immunity of counties and municipalities is derived from the 
State’s sovereign immunity” and “the nature of governmental immunity for 
counties and municipalities prevents them from asserting the defense of immunity 
when sued by the State or a State agency.”[34] The Ohio Supreme Court has 
likewise held that a municipality cannot assert immunity against the State’s 
negligence action, noting that it is inscrutable to let a city assert immunity 
against the State itself.[35]
While the 
laws of Maryland and Ohio differ from Texas law in some respects, as the Court’s 
opinion details,[36] the analysis of these 
state high courts pivoted not on any oddities of Maryland and Ohio law, but on 
the same fundamental legal principles that form the crux of the instant dispute: 
whether a city may wield its borrowed immunity against the State that loaned 
it.[37]
For years and 
unsuccessfully, injured parties have castigated the legal doctrine of immunity 
as fundamentally unfair.[38] Another one-sided truism 
of immunity is this: what the State giveth, the State can taketh away. That is 
true in the Tort Claims Act, where the State waives tort immunity but then 
carves out numerous exceptions to that waiver,[39] or here, where the State 
shares its immunity with cities but then yanks it back when it decides to sue 
one. Like a teenager’s allowance, a city’s derived immunity rises or falls (or 
disappears) on the sovereign’s whim and benevolence.
                              
V. The City’s Alternative Arguments Also Miss the Mark
The City and 
amici posit several alternative arguments, all unpersuasive.
For example, 
they warn strenuously that if political subdivisions are not afforded immunity 
from State negligence suits, municipal coffers will be raided and plundered by 
state agencies. Whether such criticism portends a Pandora’s box or merely a can 
of worms, such alarm is misdirected and unwarranted.[40]
There exist 
specific constitutional, budgetary and pragmatic safeguards that, while not 
guaranteeing the total absence of imprudent litigation, would certainly militate 
against indiscriminate suits. First, such litigation would not be launched 
willy-nilly by a rogue, unaccountable state agency, but by or with the express 
approval of the Attorney General in the name of the State of Texas, acting 
within the scope of his authority as a constitutional officer and State 
government’s principal lawyer. As we have noted, “The Attorney General, as the 
chief legal officer of the State, has broad discretionary power in conducting 
his legal duty and responsibility to represent the State.”[41] Moreover, “[t]he Attorney 
General is a member of the Executive Department whose primary duties are to 
render legal advice in opinions to various political agencies and to represent 
the State in civil litigation.”[42] The Appropriations Act 
makes clear that a state agency cannot use appropriated funds to “initiate a 
civil suit or defend itself against a legal action without the consent of the 
Attorney General.”[43] In addition, the 
Appropriations Act and the Texas Government Code both require the Attorney 
General’s express approval of a state agency’s request to retain outside legal 
counsel.[44] Again, such oversight does 
not prevent all inadvisable litigation—whether the caption reads “State v. City” 
or “State v. ACME Widget Co.”—but it imposes a measure of accountability, 
however imperfect.
Second, a 
Legislature displeased with certain litigation could arguably enact additional 
budgetary measures to starve any disfavored lawsuits and put strict conditions 
on how public funds are spent. Also, the Legislature is well-equipped to counter 
almost any Court ruling it dislikes, and if it believes that permitting “State 
v. City” suits will embolden the State to run roughshod over cash-strapped 
cities, it can severely restrict or proscribe such suits altogether if it 
chooses.
If anything, 
“the political nature of all the parties, and the sensitivity of these 
intergovernmental issues,”[45] cited by the Court as 
reasons to defer to the Legislature, would themselves help deter unreasonable 
suits. One meaningful political brake is that the Attorney General, aside from 
seeking funding from the Legislature every two years, has to reapply for his job 
every four years. Facing millions of Texas voters imposes an electoral safeguard 
that, while it cannot foreclose an obdurate and vengeful Attorney General 
Javert, at least imposes a political check in lieu of or in addition to 
legislative oversight. The Attorney General is politically answerable to voters 
throughout Texas, including voters in any municipality subject to suit, and also 
answerable to their respective representatives and senators who can intervene to 
counter adverse litigation and rein in any perceived missteps. Finally, the 
Attorney General, to put it mildly, faces innumerable other priorities and 
responsibilities when deciding how to deploy his limited litigation 
resources.
Among the 
City’s myriad “sovereignty” arguments, it argues that the Attorney General 
exceeded his constitutional authority and violated the separation of powers by 
initiating this suit: “The Attorney General has no power or right to speak for 
the sovereign people concerning whether local governments enjoy immunity from 
suit by the State on behalf of TxDOT.” This argument rests upon a flawed premise 
and distorts the nature of the instant litigation. The Attorney General has not 
single-handedly abrogated the City’s governmental immunity; that immunity 
determination is for this Court, not the Attorney General. The Attorney General 
filed suit on the State’s behalf to seek redress for damage to the State’s 
sovereign property rights.[46] The existence and scope of 
governmental immunity is controlled by this Court’s application of common-law 
principles, not the Attorney General’s election to bring suit. While the 
Attorney General may in limited circumstances waive the State’s sovereign 
immunity by suing on the State’s behalf,[47] even the State’s principal 
lawyer is powerless to nullify a city’s common-law governmental immunity. 
In short, the Attorney General cannot waive what does not exist. The City’s 
asserted immunity should fail here not because the Attorney General says so, but 
because its derivative nature renders it wholly nonexistent against the State. 
Although the Attorney General controls litigation on behalf of the State, filing 
an action that exposes the absence of common-law governmental immunity is not 
the same as invading the Legislature’s province to waive pre-existing immunity. 
The City makes no persuasive argument that the Attorney General overstepped his 
authority if he is correct, as I believe he is, that a State-created subdivision 
cannot turn its borrowed immunity against the State itself.
VI. Conclusion
In this case, 
where you end up depends on where you start. The Court’s starting point is that 
a city cannot be sued unless the Legislature has unmistakably waived immunity. I 
agree wholeheartedly when the petition reads “Citizen v. City” but in the 
exceedingly rare case when it reads “State v. City,” there is nothing for the 
Legislature to waive.
I 
respectfully dissent because I believe that history, logic, precedent, and the 
underlying justifications for recognizing governmental immunity in the first 
place all weigh against recognizing its existence in this case.
 
 
____________________________________
Don R. 
Willett
Justice
 
OPINION 
DELIVERED: MARCH 2, 2007




[1] ___ S.W.3d ___, ___.

[2] Reata Constr. Corp. v. City of Dallas, 197 
S.W.3d 371, 375 (Tex. 2006) (emphasis added).

[3] ___ S.W.3d at ___.

[4] Abraham Lincoln, Fragment: Notes for a Law Lecture, 
in 2 Collected Works of Abraham 
Lincoln 81, 81 (Roy P. Basler ed., 1953).

[5] Neeley v. W. Orange-Cove Consol. Indep. Sch. 
Dist., 176 S.W.3d 746, 779 (Tex. 2005) (“[T]he judiciary’s duty is to decide 
the legal issues properly before it without dictating policy 
matters.”).

[6] Tex. A&M Univ.-Kingsville v. Lawson, 
87 S.W.3d 518, 520 (Tex. 2002) (plurality opinion). 

[7] See Univ. of Tex. Med. Branch v. York, 871 
S.W.2d 175, 177 (Tex. 1994) (reaffirming that “waiver of governmental immunity 
is a matter addressed to the Legislature”); see also City of Tyler v. 
Likes, 962 S.W.2d 489, 494 (Tex. 1997) (explaining “that the Tort Claims Act 
does not create a cause of action; it merely waives sovereign immunity as a bar 
to a suit that would otherwise exist”); Thomas v. Oldham, 895 S.W.2d 352, 
357 (Tex. 1995) (noting that the “Tort Claims Act created a limited waiver” of 
common-law immunity).

[8] The Court declares that “waiving immunity or finding it 
nonexistent have precisely the same effect,” ___ S.W.3d at ___, but the 
distinction is more fateful than fine. Whether Texas cities inherently possess 
immunity from suit, or instead borrow the State’s, is in my view legally 
dispositive. It is one thing to waive my Fifth Amendment right to remain silent 
but quite another to hear that no such right exists in the first 
place.

[9] 106 S.W.3d 692, 695 (Tex. 2003); see also Fed. Sign 
v. Tex. S. Univ., 951 S.W.2d 401, 409 (Tex. 1997) (“[T]his Court has 
uniformly held that it is the Legislature’s sole province to waive or abrogate 
sovereign immunity.”). 

[10] We also wrote in Taylor that this Court, like 
those in other jurisdictions, has not “foreclosed the possibility that the 
judiciary may abrogate immunity.” 106 S.W.3d at 695B96. If this Court has the authority to consider 
abolishing immunity, then we may certainly determine its 
existence.

[11] 197 S.W.3d at 374.

[12] See id.

[13] ___ S.W.3d at ___. 

[14] Alden v. Maine, 527 U.S. 706, 713 (1999) (noting 
that the United States Constitution “‘specifically recognizes the States as 
sovereign entities’”) (quoting Seminole Tribe v. Florida, 517 U.S. 44, 71 
n.15 (1996)).

[15] Printz v. United States, 521 U.S. 898, 919 
(1997) (quoting The Federalist 
No. 39 (James Madison)).

[16] Alden, 527 U.S. at 724. 

[17] Tex. Civ. Prac. 
& Rem. Code § 101.001(3)(B) (including “any city” among the listed 
political subdivisions); City of Lancaster v. Chambers, 883 S.W.2d 650, 
658 (Tex. 1994). 

[18] Payne v. Massey, 196 S.W.2d 493, 495 (Tex. 
1946).

[19] Cmty. Commc’ns Co. v. City of Boulder, 455 U.S. 
40, 53 (1982) (citation omitted); Reynolds v. Sims, 377 U.S. 533, 575 
(1964) (“Political subdivisions of StatesCcounties, cities, or whateverCnever were and never have been considered as sovereign 
entities.”).

[20] 18 Eugene McQuillin, The Law of Municipal 
Corporations § 53.02.10 (3d ed. 2004) (hereinafter McQuillin). 

[21] Unlike the Court, I see no legal significance in the 
City’s status as a home-rule city, which the City insists elevates it to the 
level of a sovereign entity vested with inherent immunity. While home-rule 
cities possess the power of local self-government, see Tex. Loc. Gov’t Code § 51.072, this 
Court’s settled view is that Texas cities, home-rule or otherwise, are deemed to 
be State agents for immunity purposes when performing governmental functions, 
subject to state control, Proctor v. Andrews, 972 S.W.2d 729, 734 (Tex. 
1998), with “no sovereignty distinct from the state,” Massey, 196 S.W.2d 
at 495. Immunity from suit is an inherent attribute of sovereignty, something 
that only the federal and state governments have. A home-rule city’s 
governmental immunity springs from the common law, and nothing in Texas law 
suggests that the governmental immunity afforded home-rule cities is more 
muscular than that afforded “lesser” municipalities. Texas citiesChowever constitutedCare afforded the State’s immunity when performing 
governmental functions because they are acting as the State’s agents. More to 
the point, this “home-rule sovereignty” argument was rejected by the United 
States Supreme Court in Community Communications Co. v. City of Boulder, 
455 U.S. at 53B54. In that case, the City of Boulder argued that its 
home-rule status entitled it to an exemption from the Sherman Act since its 
sovereignty derived directly from the people via the Colorado Home Rule 
Amendment. Id. at 52. The Court disagreed and refused to grant the 
City antitrust immunity under the so-called “state action” doctrine of Parker 
v. Brown, 317 U.S. 341 (1943). The Court reasoned that the City of Boulder’s 
constitutional home-rule status was insufficient to confer sovereign privileges 
because “[o]urs is a ‘dual system of government,’ which has no place for 
sovereign cities.” Cmty. Commc’ns Co., 455 U.S. at 53 (citation 
omitted).

[22] State v. Brannan, 111 S.W.2d 347, 
348B49 (Tex. Civ. App.CWaco 1937, writ ref’d).

[23] The doctrines of sovereign and governmental immunity 
are related but distinguishable; sovereign immunity protects the State itself 
(and various divisions of state government) while governmental immunity protects 
political subdivisions. See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. 
v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund, ___ S.W.3d ___, 
___ (Tex. 2006); Taylor, 106 S.W.3d at 694 n.3.

[24] City of Galveston v. Posnainsky, 62 Tex. 118, 
127, 130B31 (1884).

[25] See, e.g., Fort Worth Indep. Sch. Dist. v. 
City of Fort Worth, 22 S.W.3d 831, 840 n.12 (Tex. 2000) (“[A] city is deemed 
an agent of the state for sovereign immunity purposes when exercising its powers 
for a public purpose.”); City of Houston v. Shilling, 240 S.W.2d 1010, 
1011 (Tex. 1951) (“‘[T]he rule is recognized that a municipality is exempt from 
liability when it performs a duty imposed upon it as the arm or agent of the 
state in the exercise of a strictly governmental function solely for the public 
benefit.’” (quoting City of Amarillo v. Ware, 120 Tex. 456, 456 (Tex. 
1931))).

[26] Posnainsky, 62 Tex. at 127.

[27] Gates v. City of Dallas, 704 S.W.2d 737, 
738B39 (Tex. 1986). 

[28] Fort Worth Indep. Sch. Dist., 22 S.W.3d at 840 
n.12. 

[29] “A municipality derives its general tort immunity from 
the state because it is deemed to act as the state’s arm or agent when 
performing governmental functions.” 18 McQuillin § 53.24.

[30] See, e.g., Tex. Workers’ Comp. Comm’n 
v. City of Eagle Pass/Tex. Mun. League Workers’ Comp. Joint Ins. Fund, 14 
S.W.3d 801, 803B04 (Tex. App.CAustin 2000, pet. denied); City of Crystal City v. 
Crystal City Country Club, 486 S.W.2d 887, 889 (Tex. Civ. App.CBeaumont 1972, writ ref’d n.r.e.). Moreover, while the 
Court eschews the notion that “an entity can sue itself,” ___ S.W.3d at ___, 
there is nothing novel about allowing a principal to sue his agent. The 
Restatement of Agency, in fact, devotes a whole chapter to the duties and 
liabilities of the agent to his principal. Restatement (Second) of Agency §§ 
376B431 (1958).

[31] We note that a similar argument would not necessarily 
apply to a State in relation to the federal government. As a historical matter 
States possessed and retained a certain measure of sovereignty when they joined 
the United States, and a component of that sovereignty was sovereign immunity. 
See Alden, 527 U.S. at 712B27.

[32] 18 
McQuillin § 53.24. The United States 
Supreme Court spoke to immunity’s early history in Alden v. Maine, 527 
U.S. at 741, noting, “In England, the rule was well established that ‘no lord 
could be sued by a vassal in his own court, but each petty lord was subject to 
suit in the courts of a higher lord.’“ (quoting Nevada v. Hall, 440 U.S. 
410, 414B15 (1979)). The Court in Alden recognized that it 
is one thing to say that a lord cannot be sued by one of his serfs, and quite 
another to say that this principle shields the lord from any claim for redress 
from his king. 

[33] These are apparently the only two published cases in 
the nation confronting the question before us.

[34] Bd. of Educ. v. Mayor & Common Council, 578 
A.2d 207, 210 (Md. 1990) (a tort case where a state agency sued town officials 
for property damage to a school caused by leaks from an underground gas tank 
maintained by the town).

[35] State v. City of Bowling Green, 313 N.E.2d 409, 
412 (Ohio 1974) (a tort case where the state sued the city after numerous fish 
were killed by the city’s negligent operation of a sewage-treatment plant). In 
this case, the Ohio Supreme Court explained:
 
[A] municipality is not directly clothed with or 
relieved from immunity from liability in tort by any constitutional provision. 
Its immunity is derivative; it arises because the municipality, when performing 
a governmental function, is acting as an arm or agent of the state.
Where a municipality negligently performs a governmental 
function, and as a proximate result thereof a private injury is caused, the 
injured party cannot maintain a damage suit against the municipality because the 
city is clothed with the state’s immunity. In such a situation the state is 
analogous to a principal with immunity, and the municipality to an agent, and 
the injured party to a third person. The immunity of the principal filters down 
to the agent. However, where the injured party is the state itself, this analogy 
disintegrates. Instead, the situation resembles a suit by a principal against an 
agent whose negligence has resulted in damage to the principal. In such a 
situation it would be illogical to allow the municipality to assert its general 
tort immunity against the very source of that immunity.
 
Id. at 412 
(footnote omitted). 

[36] ___ S.W.3d at ___ & nn.35B36.

[37] The Austin Court of Appeals reached the same conclusion 
in City of Eagle Pass, 14 S.W.3d at 803. In that case, the court rejected 
the argument of two political subdivisions that they were immune from 
Commission-assessed penalties absent an unequivocal waiver of their immunity. 
The court stressed the derivative nature of governmental immunity and, quoting 
our decision in Payne, concluded that “[b]ecause political subdivisions 
of the State do not possess such independent sovereignty, they have no immunity 
as against the State.” Id. at 803.

[38] The Court raises that objection here, casting it as one 
of “fundamental fairness.” ___ S.W.3d at ___. But just as immunity is inherent 
to sovereignty, unfairness is inherent to immunity. Indeed, that is precisely 
the point of one-sided immunityCto let government off the hook. In any event, under 
Reata, if the State sues for monetary damages, it waives immunity from 
any relevant offset counterclaims. 197 S.W.3d at 376B77.

[39] Tex. Civ. Prac. 
& Rem. Code §§ 101.001B101.109.

[40] The Court says a trial court may have trouble enforcing 
a judgment against a government defendant who refuses to pay damages, ___ S.W.3d 
at ___, but this is not a novel concern. Such difficulties are no more acute 
here than when a private plaintiff successfully sues a government entity on a 
claim for which legislators have waived immunity.

[41] Terrazas v. Ramirez, 829 S.W.2d 712, 721 (Tex. 
1992).

[42] Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001). 


[43] General Appropriations Act, 79th Leg., R.S., ch. 1369, 
art. IX, § 6.21(b), 2005 Tex. Gen. Laws 4324, 5158. 

[44] Id. § 6.21(a); Tex. Gov’t Code § 402.0212. 


[45] ___ S.W.3d at ___.

[46] We recently reaffirmed that the State holds a superior 
right of ownership in public roads. Tex. Dep’t of Transp. v. City of 
Sunset Valley, 146 S.W.3d 637, 644B45 (Tex. 2004) (noting that a city merely holds roads in 
trust for the benefit of the State).

[47] See Reata, 197 S.W.3d at 376B77 (a governmental entity that brings an affirmative 
claim for monetary damages waives immunity for offset claims that are germane 
to, connected with, and properly defensive of affirmative 
claim).