

# NUMBER 13-08-00618-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DAHLILA GUERRA CASSO,**                                             **Appellant,**

**v.**

**CITY OF McALLEN,**                                                   **Appellee.**

---

### On appeal from the 92nd District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

Appellant, Dahlila Guerra Casso, brings this appeal following the trial court's granting of a plea to the jurisdiction in favor of appellee, the City of McAllen (the "City"). By one issue, Casso contends that by providing its employees with health insurance, the City engages in a proprietary function and, therefore, is not entitled to governmental immunity.[1] We reverse and remand.

---

[1] The record before us is limited to the agreement between Casso and the City. Accordingly, we do not express an opinion on health benefits extended to other employees, if any.

## I. BACKGROUND

On December 28, 2007, Casso, a former municipal judge for the City, filed a breach of contract action against the City, alleging that the City failed to: (1) maintain her health insurance coverage; and (2) pay her health insurance premiums through June 2002 pursuant to a contract executed on April 12, 1999.[2] The April 12, 1999 contract, entitled "RELEASE IN FULL AND SETTLEMENT AGREEMENT," provided the following, in relevant part:

### 1. CONSIDERATION

In consideration for the promise made by Casso in this Agreement, the City agrees to the following payments and/or benefits referred herein as "Consideration": a lump sum payment equal to Fifty Thousand Dollars ($50,000.00) plus an amount equal to the City's total contributions to Casso's T.M.R.S. account as of the date of execution of this Agreement. In addition, the City will continue to pay Casso's health insurance premiums for Health Insurance coverage with [t]he City of McAllen throughout the period of time from the date of the execution of this Agreement through June 2002.

Casso further alleged that the April 12, 1999 contract granted her the status of retiree, so that she could maintain continuous health insurance coverage from the City. However, on December 31, 2003, Casso's health insurance coverage was terminated by the City.

On December 28, 2007, Casso filed her original petition, asserting that the City had breached the April 12, 1999 agreement. The City filed an original answer and a plea to the jurisdiction, contending that it is a governmental unit and, therefore, is immune from Casso's suit. The trial court granted the City's plea to the jurisdiction on August 22, 2008, thus dismissing Casso's lawsuit.

Casso filed her original motion to reinstate the case on September 18, 2008, and

---

[2] The contract executed on April 12, 1999, was an agreement between the City and Casso regarding the resolution of certain employment claims that Casso had against the City.

2

a verified amended motion to reinstate on September 22, 2008. The trial court did not rule on either of Casso's motions to reinstate; therefore, both motions were overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). On November 3, 2008, Casso filed her notice of appeal.

## II. Timeliness of Casso's Interlocutory Appeal

Before we discuss the merits of Casso's appeal, we address the City's contention that Casso failed to timely file her notice of appeal because she filed a motion to reinstate rather than a motion for new trial which did not, under these circumstances, serve to extend the appellate deadline to file a notice of appeal. *See* Tex. R. App. P. 26.1(a). A motion is judged by its substance rather than its heading. *Austin Neighborhoods Council, Inc. v. Bd. of Adjustment*, 644 S.W.2d 560, 565 (Tex. App.–Austin 1982, writ ref'd n.r.e); *see also* Tex. R. Civ. P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated."); *Kriegel v. Actkinson*, No. 07-07-0237-CV, 2007 Tex. App. LEXIS 8380, at *6 (Tex. App.–Amarillo Dec. 21, 2007, pet. denied) (mem. op.). We determine the substance of the motion from the body of the instrument and its prayer for relief. *See Mercer v. Band*, 454 S.W.2d 833, 835 (Tex. Civ. App.–Houston [14th Dist.] 1970, no writ); *see also Kriegel*, 2007 Tex. App. LEXIS 8380, at *6. In other words, the focus is on how the motion will affect the litigation if the relief requested is granted. *See Austin Neighborhoods Council, Inc.*, 644 S.W.2d at 565; *see also Kriegel*, 2007 Tex. App. LEXIS 8380, at *6.

On appeal, Casso argues that the substance of her verified motion to reinstate is that of a motion for new trial. Casso cites *Hancock v. Gathright*, 451 S.W.2d 591, 592

(Tex. Civ. App.–Waco 1970, no writ) and *Fourticq v. Fannin Bank*, 461 S.W.2d 251, 252 (Tex. Civ. App.–Houston [14th Dist.] 1970, writ ref'd n.r.e.) to support her argument. Both *Hancock* and *Fourticq* involved dismissals for want of prosecution and both courts noted that "a motion to reinstate after dismissal is usually accorded the legal effect of a motion for new trial." *See Hancock*, 451 S.W.2d at 592; *see also Fourticq*, 461 S.W.2d at 252 ("A motion to reinstate is in the nature of a motion for new trial.") (quoting *Drawe v. McGuffin*, 355 S.W.2d 738, 738 (Tex. Civ. App.–San Antonio 1961, no writ)). However, in the instant case, Casso's claims were not dismissed for want of prosecution. Rather, her claims were dismissed for want of jurisdiction. We therefore conclude that the holdings in *Hancock* and *Fourticq* are not applicable.

Ultimately, we must review the substance of Casso's verified motion to reinstate to determine if her motion is analogous to one of the motions enumerated in Texas Rule of Appellate Procedure 26.1(a). *See* Tex. R. App. P. 26.1(a) (extending the deadline for filing a notice of appeal to ninety days after the judgment is signed if a party timely files: (1) a motion for new trial; (2) a motion to modify the judgment; (3) a motion to reinstate under Texas Rule of Civil Procedure 165a;[3] or (4) a request for findings of fact and conclusions of law). In reviewing the substance of Casso's verified motion to reinstate, we are mindful of the supreme court's policy of construing rules "reasonably, but liberally, when possible, so that the right to appeal is not lost . . . ." *Jamar v. Patterson*, 868 S.W.3d 318, 319 (Tex. 1993) (per curiam); *see* Tex. R. Civ. P. 321 ("Each point relied upon in a motion for new trial . . . shall briefly refer to that part of the ruling of the court . . . or other proceedings which are designated to be complained of, in such a way that the objection can be clearly

---

[3] Texas Rule of Civil Procedure 165a involves suits dismissed for want of prosecution and provides that a motion for reinstatement is the only avenue for relief in such cases. Tex. R. Civ. P. 165a.

4

identified and understood by the court.").

Casso's verified motion to reinstate provides the following, in pertinent part:

> Plaintiff Dahlila Guerra Casso had invasive surgery performed that prevented her from prosecuting this cause. Plaintiff is currently recovering from said surgery and should soon be able to resume prosecuting this matter.

> Plaintiff request [sic] that this case be reinstated. This Motion is not filed for the purpose of delay but in the interest of justice.

> WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this cause will be reinstated on the docket, and for such other and further relief to which Plaintiff may be justly entitled.

A liberal interpretation of Casso's verified motion to reinstate yields the result that a motion for new trial would have sought. *See Mercer*, 454 S.W.2d at 835; *Finley v. J.C. Pace, Ltd.*, 4 S.W.3d 319, 320 (Tex. App.–Houston [1st Dist.] 1999, order on motion); *see also Kriegel*, 2007 Tex. App. LEXIS 8380, at **6-7 ("Reduced to its basic elements, a motion for new trial must ask the court to both set aside an existing judgment and relitigate the issues."). The effect of Casso's verified motion to reinstate, if it had been granted, would have been to reverse the trial court's dismissal order and a trial would have resulted. *See Gomez v. Tex. Dep't of Criminal Justice-Inst. Div.*, 896 S.W.2d 176, 176-77 (Tex. 1995) (per curiam) (extending the appellate timetable from thirty days to ninety days by reclassifying an inmate's "bill of review" as a motion for new trial because the filing "assailed the trial court's judgment"); *Finley*, 4 S.W.3d at 320 ("Accordingly, the motion sought to set aside the existing judgment for the purpose of litigating the issues. If the trial court granted the motion, a trial would have resulted. Thus, the motion may be considered a request for a new trial."); *see also Kriegel*, 2007 Tex. App. LEXIS 8380, at *6 (citing *Austin Neighborhoods Council, Inc.*, 644 S.W.2d at 565). Thus, Casso's verified motion

5

to reinstate may be construed as a motion for new trial. *See* Tex. R. App. P. 26.1(a)(1); *Mercer*, 454 S.W.2d at 835; *see also Kriegel*, 2007 Tex. App. LEXIS 8380, at \*\*6-7; *accord Finley*, 4 S.W.3d at 320.

Rule 329b(a) of the rules of civil procedure requires that a motion for new trial be filed within thirty days after the judgment or complained of order is signed. *See* Tex. R. Civ. P. 329b(a), (g). Here, Casso filed both of her motions to reinstate within thirty days of the trial court's August 22, 2008 judgment. *See id.* A party's notice of appeal must be filed "within 90 days after the judgment is signed if any party timely files . . . a motion for new trial . . . ." Tex. R. App. P. 26.1(a)(1). Casso filed her notice of appeal within ninety days of the trial court's August 22, 2008 judgment; therefore, we conclude that Casso's appeal is timely. *See id.*

### III. Immunity and Proprietary Functions

By her sole issue on appeal, Casso contends that the City's practice of paying employee health insurance premiums amounts to a proprietary function that prevents the City from asserting governmental immunity. Thus, Casso argues that the trial court erred in granting the City's plea to the jurisdiction. The City's position is that the "hiring and firing" of a municipal judge and agreements related to those actions involve governmental functions, thereby entitling the City to sovereign immunity.[4] The City further argues that Casso failed to allege sufficient facts in her live petition to affirmatively demonstrate the trial court's jurisdiction. The City also argues that Casso waived her argument pertaining

---

[4] The terms sovereign immunity and governmental immunity are often used synonymously and interchangeably without distinction. However, the supreme court has stated that sovereign immunity refers to the State's immunity from suit and liability and protects the State and its divisions, while governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). We will therefore analyze Casso's issue within the context of governmental immunity. *See id.*

to the distinction between governmental and proprietary functions as a basis for jurisdiction by not arguing this point to the trial court.[5]

## 1. Standard of Review

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has subject-matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.–Fort Worth 2003, pet. denied). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228; *City of Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.–Fort Worth 2004, pet. denied).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the

---

[5] Although the parties did not raise the issue of whether the City was performing a governmental or proprietary function with the trial court, we will address the issue because it involves a potential lack of subject-matter jurisdiction, which can be raised for the first time on appeal. *See Temple v. City of Houston*, 189 S.W.3d 816, 819 n.3 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (citing *Supak v. Zboril*, 56 S.W.3d 785, 792 (Tex. App.–Houston [14th Dist.] 2001, no pet.); *Nuchia v. Woodruff*, 956 S.W.2d 612, 616 (Tex. App.–Houston [14th Dist.] 1997, pet. denied)); *see also Patterson v. Gulf Marine Inst. of Tech.*, No. 13-06-067-CV, 2008 Tex. App. LEXIS 1462, at *15 (Tex. App.–Corpus Christi Feb. 28, 2008, pet. denied) (mem. op.) ("[A] trial court's lack of subject-matter jurisdiction 'is fundamental error and must be noted and reviewed by the appellate court at any time it appears.'") (quoting *Fincher v. City of Texarkana*, 598 S.W.2d 22, 23 (Tex. Civ. App.–Texarkana 1980, writ ref'd n.r.e)).

7

jurisdictional issues raised, as the trial court is required to do. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (confining evidentiary review to evidence that is relevant to the jurisdictional issue). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder. *Id.* at 227-28; *Bland*, 34 S.W.3d at 555. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 227-28; *Bland*, 34 S.W.3d at 555.

## 2. Applicable Law

Governmental immunity protects against lawsuits for money damages to the extent a municipality engages in the exercise of governmental functions. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001); *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex. 1997); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997); *see also* Tex. Gov't Code Ann. § 311.034 (Vernon Supp. 2008) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

Governmental immunity has developed into two distinct forms: (1) immunity from suit, which bars suit against a governmental entity altogether; and (2) immunity from liability, which bars enforcement of a judgment against a governmental entity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006); *see City of Weslaco v. Borne*, 210

8

S.W.3d 782, 789 (Tex. App.–Corpus Christi 2006, pet. denied). Immunity from suit implicates a court's subject-matter jurisdiction, whereas immunity from liability does not. *See Jones*, 8 S.W.3d at 638. This is because immunity from liability protects against a final judgment and not against the suit itself. *Tooke*, 197 S.W.3d at 331. Consequently, the two types of immunity must be raised in different ways. A plea to the jurisdiction is the appropriate procedural vehicle for challenging a court's jurisdiction based on immunity to suit. *See Jones*, 8 S.W.3d at 638. In contrast, immunity to liability must be pled as an affirmative defense under Texas Rule of Civil Procedure 94. *See* TEX. R. CIV. P. 94; *Jones*, 8 S.W.3d at 638.

Whether a municipality is immune from suit depends upon the characterization of the municipality's actions as either governmental or proprietary functions. A municipality is not immune from suit when it engages in the exercise of proprietary functions. *See Tooke*, 197 S.W.3d at 343; *Fed. Sign*, 951 S.W.2d at 405; *Temple v. City of Houston*, 189 S.W.3d 816, 819 (Tex. App.–Houston [1st Dist.] 2006, no pet.). "A proprietary function is one a city performs, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for the use by the general public." *Temple*, 189 S.W.3d at 819 (quoting *Truong v. City of Houston*, 99 S.W.3d 204, 209 (Tex. App.–Houston [1st Dist.] 2002, no pet.)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b) (Vernon 2005) (stating that proprietary functions "are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality").[6] On the other hand, a municipality is immune from suit "in the performance of purely governmental

---

[6] Section 101.0215(b) of the civil practice and remedies code sets forth a list of proprietary functions, "*including but not limited to*: (1) the operation and maintenance of a public utility; (2) amusements owned and operated by the municipality; and (3) any activity that is abnormally dangerous or ultrahazardous." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b) (Vernon 2005) (emphasis added).

matters solely for the public benefit," or, in other words, by performing governmental functions. *Tooke*, 197 S.W.3d at 343 (quoting *Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992, 993 (1949)).

### 3. Discussion

We now address the City's contention that Casso failed to affirmatively demonstrate the trial court's jurisdiction to hear the case. "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446). In determining whether the plaintiff has met that burden, "we consider the facts alleged by the plaintiff and, to the extent that it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Id.* (citing *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001)).

In her live pleading, Casso alleged that the City had breached the April 12, 1999 contract by failing to "compensate [her] the mutually agreed health benefits pursuant to the contract" and to designate her as a retiree. Furthermore, the record contains a copy of the April 12, 1999 contract, which outlined the City's agreement to pay Casso's health insurance premiums and which was signed by both Casso and the City's attorney. Considering the facts alleged and the evidence submitted, it is clear that Casso is suing for a discretionary act performed by the City for her benefit rather than for the general public. Therefore, Casso alleged a valid waiver of immunity. *See id.*

On appeal, the City recharacterizes Casso's suit as one involving the "hiring and firing" of municipal employees. Specifically, the City contends that the actions of municipal

courts and agreements relating to the hiring and termination of court personnel constitute governmental functions, thereby entitling the City to immunity.[7]  In support of its contentions, the City relies primarily on four cases.  *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995); *City of Roman Forest v. Stockman*, 141 S.W.3d 805, 809 (Tex. App.–Beaumont 2004, no pet.); *City of Dallas v. Moreau*, 718 S.W.2d 776, 779 (Tex. App.–Corpus Christi 1986, writ ref'd n.r.e.).

We construe Casso's lawsuit as centering on the City's refusal to provide her health insurance coverage pursuant to the April 12, 1999 contract; therefore, we disagree with the City's recharacterization of Casso's suit as a more general "hiring and firing" claim.  Hence, the cases cited by the City are not dispositive and do not resolve the question of whether the City's decision to provide health insurance benefits to Casso is a governmental or proprietary act.  *See Temple*, 189 S.W.3d at 820.

Casso relies primarily on three cases for the proposition that the City's act of providing health insurance benefits to her is a proprietary function.  *See Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986); *Temple*, 189 S.W.3d at 819; *Bailey v. City of Austin*, 972 S.W.2d 180, 193 (Tex. App.–Austin 1998, pet. denied).  We agree that the holdings in *Gates*, *Temple*, and *Bailey* answer the issue before us.

---

[7] In support of its argument that Casso's suit primarily pertained to her employment classification, the City argues that "[t]he decision of whether to retain a municipal judge and the agreements related to that decision are directed to [the] discretion of the municipality in connection with its judicial function."  The City also argues that the actions of the municipal court in addressing employment matters, though not listed in section 101.0215 of the civil practice and remedies code, constitute an exercise of the municipality's police power, which is defined as a governmental function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(1) (stating that "police and fire protection and control" is a governmental function); § 101.0215(a)(7) (noting that "establishment and maintenance of jails" are governmental functions); § 101.0215(a)(21) (providing that "regulation of traffic" is a governmental function).  Again, we note that the crux of Casso's lawsuit involves the City's refusal to pay health insurance benefits pursuant to the April 12, 1999 contract.  We therefore conclude that this argument lacks merit.

11

In *Gates*, the Texas Supreme Court discussed the differences between governmental and proprietary functions. 704 S.W.2d at 738-39. The supreme court noted that "[u]nlike governmental functions, for which municipal corporations [such as the City] have traditionally been afforded some degree of governmental immunity, proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations." *Id.* at 739. The court further noted that "[c]ontracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals." *Id.* The court subsequently concluded that "[w]hen the City of Dallas entered into the insurance contract with Gates [a dependent of a city employee], it acted in its proprietary role and was clothed with the same authority and subject to the same liabilities as a private citizen." *Id.* (internal quotations omitted).

In *Temple*, the court of appeals analyzed whether the City of Houston's act of providing health insurance benefits to its employees when not obligated by statute constituted a governmental or proprietary function. 189 S.W.3d at 819-21. In concluding that the city performed a proprietary function by providing its employees with health insurance benefits, the court noted that "'[t]he key difference between a proprietary and governmental function is that the city functions in its governmental capacity when it performs functions mandated by the state.' The City does not refer us to any state mandatory requirement that the City must provide insurance benefits to its police officers . . . and we are aware of none." *Id.* at 820 (quoting *Truong*, 99 S.W.3d at 209-10).

In *Bailey*, the court of appeals analyzed whether the City of Austin's act of providing a health plan to its employees constituted a governmental or proprietary function. 972

12

S.W.2d at 192-93. The court noted that the city had three health plans available: a self-insured plan and two HMO plans administered by private insurers. *Id.* at 193. The city managed and administered its own plan, oversaw the HMO plans, and deducted premiums from its employees' paychecks for all three plans. *Id.* The court concluded that it could not be reasonably argued that by providing its employees with health insurance, the city was engaged in acts that were in "'furtherance of general law for the interest of the public at large.'" *Id.* (quoting *City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887, 889 (Tex. Civ. App.–Beaumont 1972, writ ref'd n.r.e.)). The court further concluded that "the City's function of offering, administering, and overseeing health care plans for its own employees are proprietary functions. Such activities are not integral to its function as an arm of the state." *Id.* (citing *City of Houston v. Sw. Concrete Constr., Inc.*, 835 S.W.2d 728, 731 (Tex. App.–Houston [14th Dist.] 1992, writ denied)).

The City has not cited, nor are we aware of, statutory authority demonstrating that providing health insurance coverage to Casso constituted a governmental function or that the legislature mandated the City to provide Casso with health insurance coverage. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (setting forth a non-exclusive list of governmental functions); *see also* TEX. LOC. GOV'T CODE ANN. § 172.005 (Vernon 2008) ("A political subdivision *may* establish a risk pool or *may* enter into an interlocal agreement . . . with other political subdivisions to establish a risk pool to provide health and accident coverage for officials, employees, retirees, employees of affiliated service contractors, and their dependents.") (emphasis added).

The City argues that because city employee health insurance coverage is not included in the list of proprietary functions, such actions must not be categorized as

proprietary acts. *See id.* § 101.0215(b). However, we note that the provision of such coverage is also not included in the code's list of governmental functions. *See id.* § 101.0215(a). Moreover, the City ignores the language in section 101.0215(b), indicating that the list, like the section 101.0215(a) list, is non-exclusive. *See id.* §§ 101.0215(a), (b).

Based on the foregoing, we conclude that the City was performing a proprietary function in providing Casso with health insurance coverage; therefore, the City is not entitled to governmental immunity. *See Temple*, 189 S.W.3d at 821. Rather, it is "clothed with the same authority and subject to the same liability as a private citizen." *Gates*, 704 S.W.2d at 739. Accordingly, the trial court erred in granting the City's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227-28; *Bland*, 34 S.W.3d at 555. Casso's sole issue on appeal is sustained.

## IV. CONCLUSION

We reverse the judgment of the trial court dismissing Casso's claims against the City and remand for proceedings consistent with this opinion.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 26th day of March, 2009.

14