ACCEPTED
06-15-00021-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/6/2015 8:24:09 PM
DEBBIE AUTREY
CLERK

**CASE NO. 06-15-00021-CV**

**IN THE COURT OF APPEALS
SIXTH APPELLATE DISTRICT
STATE OF TEXAS**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

7/7/2015 9:23:00 AM

DEBBIE AUTREY
Clerk

_____

**SIDNEY B. HALE, JR.**

**Defendant – Appellant**

**v.**

**CITY OF BONHAM**

**Plaintiff – Appellee**

_____

**On Appeal from the 336th Judicial District Court of Fannin County, Texas
Cause No. CV-14-41722**

_____

**APPELLANT'S BRIEF**

_____

**COATS & EVANS, P.C.**
Gary Linn Evans
State Bar No. 00795338
E-mail: evans@texasaviationlaw.com
George Andrew Coats
State Bar No. 00783846
E-mail: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, Texas  77393-0246
Telephone:  (281) 367-7732
Facsimile:  (281 367-8003

**ORAL ARGUMENT REQUESTED**

i

## IDENTITY OF PARTIES AND COUNSEL

Appellant:      Sidney B. Hale, Jr. ("Mr. Hale")

Counsel:      Gary Linn Evans
State Bar No. 00795338
George Andrew Coats
State Bar No. 00783846
**COATS & EVANS, P.C.**
Post Office Box 130246
The Woodlands, Texas 77393-0246
(281) 367-7732
(281) 367-8003 FAX

Appellees:      City of Bonham (the "City")

Counsel:      Mr. Christopher S. Kilgore
Dottie Sheffield
**HELMS & KILGORE, PLLC**
2201 Main Street, Suite 212
Dallas, Texas 75201
Telephone: 972-532-6484
Facsimile: 972-532-6496

Trial Court:      Honorable Laurine Blake, Presiding Judge
In the 336th Judicial District Court
Fannin County, Texas

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL………………………..………..ii

TABLE OF CONTENTS……………………………………….………iii

INDEX OF AUTHORITIES……………………………………………….v

STATEMENT OF THE CASE……………………………….………………xi

ISSUES PRESENTED FOR REVIEW……………………………………...xii

STATEMENT OF JURISDICTION………………………………………..xiii

STATEMENT OF FACTS…………………………………………………1

SUMMARY OF THE ARGUMENT……………………………………………3

ARGUMENT………………………………………………………….5

      STANDARD OF REVIEW…………………………………..…..5

I.     THE CITY IS NOT IMMUNE FROM CLAIMS ARISING OUT OF ITS PROPRIETARY FUNCTIONS……………………………….7

II.    THE PROPRIETARY-GOVERNMENTAL DICHOTOMY SHOULD BE APPLIED TO MR. HALE'S CONTRACTUAL AND QUASI-CONTRACTUAL CLAIMS……………………………10

III.   A LEGISLATIVE WAIVER OF IMMUNITY IS NOT NECESSARY WHEN NO IMMUNITY EXISTS…………………..15

IV.   BECAUSE THE CITY WAS ENGAGED IN A PROPRIETARY FUNCTION, THE TEXAS TORT CLAIMS ACT DOES NOT APPLY…………………………………………....19

V.    ALTERNATIVELY, EVEN IF THE TEXAS TORT CLAIMS ACT APPLIES TO THE PRESENT CASE, THE STATUTE PROVIDES A LIMITED WAIVER OF IMMUNITY UNDER THE FACTS OF THE PRESENT CASE……...24

VI.   THE TRIAL COURT'S FAILURE TO ALLOW MR. HALE THE OPPORTUNITY TO CONDUCT DISCOVERY AND/OR AMEND HIS COUNTERCLAIM IS REVERSIBLE ERROR…………………..30

PRAYER……………………………………………………………….…36

CERTIFICATE OF COMPLIANCE……………………………………...37

CERTIFICATE OF SERVICE………………………………………………38

APPENDIX……………………………………………………………………39

# INDEX OF AUTHORITIES

## **CASES**

*Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex. 1972)…………..…..27

*Austin & N.W.R. Co. v. Cluck*, 97 Tex. 172, 77 S.W. 403 (Tex. 1903)……….…..30

*Bailey v. City of Austin*, 972 S.W.2d 180 (Tex. App.—Austin 1998, pet. denied)………………………………………………………………...7, 8, 21

*Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320 (Tex. 2006)………………………………………………………………..16

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex. 2000)……………….………5

*Casso v. City of McAllen*, No. 13-08-00618, 2009 Tex.App. LEXIS 2049, 2009 WL 781863 (Tex.App.—Corpus Christi Mar. 26, 2009, pet. denied) mem. op.)…………………………………..………….........13

*City of Corpus Christi v. Absolute Industries*, 120 S.W.3d 1 (Tex.App.— Corpus Christi 2001, pet. denied)………………………………………..20

*City of Corpus Christi v. Continental Bus Systems, Inc.*, 445 S.W.2d 12 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.)……………………………7

*City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.)……………………………7

*City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392 (Tex. App.—Dallas 2002, pet. filed)……………………………………………..…….…..25

*City of Del Rio v. Felton*, No. 04-06-00091-CV, 2007 Tex. App. LEXIS 660, (Tex.App.—San Antonio 2007, no pet.)…………………………....…28

*City of El Paso v. Bernal*, 986 S.W.2d 610 (Tex. 1999)…………………………33

*City of El Paso v. Chacon*, 148 S.W.3d 417 (Tex. App.—El Paso 2004, pet. denied)……………………………………………………………………….33, 34

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009)…………………………..17

*City of El Paso v. Morales*, No. 08-02-00484-CV, 2004 Tex. App. LEXIS 7806, (Tex. App.—El Paso Aug. 20, 2004, pet. denied)…………....20, 21, 26

*City of Elsa v. Gonzalez*, 325 S.W.3d 622 (Tex. 2010)…………………………….6

*City of Galveston v. Albright*, No. 14-04-00072-CV, 2004 Tex. App. LEXIS 9693, (Tex.App.—Houston [14th Dist.] Nov. 2, 2004, no pet.)……......26, 27

*City of Galveston v. Posnainsky*, 62 Tex. 118 (1884)………….9, 10, 14, 15, 21, 22

*City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803 (Tex.App.—Austin 2013, pet. dism'd)..……..9, 10, 11, 12, 13, 14, 15, 16, 17

*City of Gladewater v. Pike*, 727 S.W.2d 514 (Tex. 1987)…………………...7, 8, 21

*City of Houston v. Cogburn*, No. 01-11-00318-CV, 2013 Tex. App. LEXIS 2827, (Tex. App.—Houston [1st Dist.] Mar. 19, 2013, no pet.)…….……..27

*City of Houston v. Rushing*, 39 S.W.3d 685 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)………………………………………………………..19, 20

*City of Midland v. Sullivan*, 33 S.W.3d 1 (Tex.App.—El Paso 2000, pet. dism'd w.o.j.)……………………………………………………………….26

*City of San Antonio v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex.App.—San Antonio 2012, pet. denied)…………..……..11

*City of Texarkana v. City of New Boston*, 141 S.W.3d 778 (Tex. App.—Texarkana 2004, pet. denied)…………………………………………..8, 9

*City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997)…………………………19, 20

*CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97 (Tex. 2000)………………………...28

*Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983)……………………..27

*Cont. Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444 (Tex. 1996)……………...1, 5

*County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002)………………………32

*County of Harris v. Eaton*, 573 S.W.2d 177 (Tex. 1978)……………………32, 33

*Denton County v. Beynon*, 283 S.W.3d 329 (Tex. 2009)…………………………33

*East Houston Estate Apartments, LLC v. City of Houston*, 294 S.W.3d 723
(Tex.App.—Houston [1st Dist.] 2009, no pet.)……………………………11

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831 (Tex.
2000)……………………………………………………………19, 20

*Gates v. City of Dallas*, 704 S.W.2d 737 (Tex. 1986)………………….…10, 12

*Gates v. Pitts*, 291 S.W. 948 (Tex. Civ. App.-Amarillo 1927, no writ)…………..31

*Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211 (Tex. 2008)………………………27, 28

*Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591 (Tex.
2001)…………………………………………………………………….19

*Gentry v. Bowser*, 21 S.W. 569 (Tex. Civ. App.—Fort Worth 1893,
no writ)…………………………………………………………………..31

*Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636 (Tex.App.—
Houston [1st Dist.] 2005, pet. denied)…………………………………..28

*Harris Cty. v. Sykes*, 136 S.W.3d 635 (Tex. 2004)………………………………...5

*Hosner v. De Young*, 1 Tex. 764 (Tex. 1847)…………………………………..30

*Klumb v. Houston Mun. Emples. Pension Sys.*, 458 S.W.3d 1 (Tex. 2015)………..6

*Lamar Univ. v. Doe*, 971 S.W.2d 191 (Tex.App.—Beaumont 1998, no pet.)……26

*Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901 (Tex. App.— Houston [14th Dist.] 2009, no pet.)………………………………………27

*Nueces County v. San Patricio County*, 246 S.W.3d 651 (Tex. 2008)……………17

*Peek v. Equip. Serv. Co.*, 779 S.W.2d 802 (Tex. 1989)…………………………5, 6

*Perez v. City of Dallas*, 180 S.W.3d 906 (Tex.App.—Dallas 2005, no pet.)……………………………………………………………………………26

*Perez v. DNT Global Star, L.L.C.*, 339 S.W.3d 692 (Tex.App.—Houston [1st Dist.] 2011, no pet.)……………………………………………...27

*Sanroc Co. Int'l v. Roadrunner Transp., Inc.*, 596 S.W.2d 320 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ)…………………………….14

*State v. $281,420.00 in U.S. Currency*, 312 S.W.3d 547 (Tex. 2010)……………14

*State v. Lueck*, 290 S.W.3d 876 (Tex. 2009)……………………………………….5

*State v. Tennison*, 509 S.W.2d 560 (Tex. 1974)…………………………………26, 28

*State v. Woollesen*, 93 S.W.3d 910 (Tex. App.—Austin 2002, no pet.)………......32

*State Dep't of Highways v. Payne*, 838 S.W.2d 235 (Tex. 1992)...26, 27, 29, 33, 34

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993)……...….31

*Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)..6, 20, 26

*Tex. Dep't. of Transp. v. Jones*, 8 S.W.3d 636 (Tex. 1999)………………………..5

*Tex. DOT v. Jones*, 8 S.W.3d 636 (Tex. 1999)……………………………………30

*Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849 (Tex. 2002)……………………………………………………………………...31

*Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347 (Tex. App.—San Antonio 2000, pet. denied)……………………………………………..20, 25

viii

*Tex. S. Univ. v. Gilford*, 277 S.W.3d 65 (Tex.App.—Houston [1st Dist.] 2009, pet. denied)……………………………………………………….26

*Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006)………10, 11, 12, 13, 16, 17

*Truong v. City of Houston*, 99 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2002, no pet.)……………………………………………..8, 21, 22

*Turvey v. City of Houston*, 602 S.W.2d 517 (Tex. 1980)…………………………..8

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358 (1st Cir. 2001)……………………...31

*Williams v. City of Midland*, 932 S.W.2d 679 (Tex.App.—El Paso 1996, no writ)……………………………………………………………21

*Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634 (Tex. 1999)……………...28

## STATUTES

Tex. Civ. Prac. & Rem. Code § 101.021…………………………………………….26

Tex. Civ. Prac. & Rem. Code § 101.021(a)…………………………………28, 29

Tex. Civ. Prac. & Rem. Code §101.021(b)………………………………………..29

Tex. Civ. Prac. & Rem. Code § 101.021(2)………………..……………..28

Tex. Civ. Prac. & Rem. Code §101.0215…………………………………………20

Tex. Civ. Prac. & Rem. Code §101.0215(a)……………………………..20, 24

Tex. Civ. Prac. & Rem. Code §101.0215(b)………………………………...21

Tex. Civ. Prac. & Rem. Code § 101.0215(c)………………………………...24

Tex. Civ. Prac. & Rem. Code § 101.022(a)…………………………………...26, 28

Tex. Civ. Prac. & Rem. Code § 101.022(b)…………………………………32, 33

Tex. Civ. Prac. & Rem. Code § 101.025……………………………………….26

Tex. Loc. Gov't Code §271.151(2)(A)…………………………………………16

Tex. Loc. Gov't Code §271.152……………………………………………...16

## STATEMENT OF THE CASE

Plaintiff-Appellee, The City of Bonham, filed its Petition for Declaratory Judgment on May 9, 2014 in the 336th Judicial District Court of Fannin County, Texas. (CR 1:7). On July 7, 2014, Defendant-Appellant, Sidney B. Hale, Jr. filed his Verified Original Answer, which included his verified denials, affirmative defenses, and special exceptions. (CR 1:51). On November 12, 2014, Mr. Hale filed his Original Counterclaims against the City, bringing claims for negligence, premises defect, breach of contract, promissory estoppel, unjust enrichment, violations of the Texas Deceptive Trade Practices Act, gross negligence and bailment. (CR 1:57). The City filed its Motion for Partial Summary Judgment on November 25, 2015 challenging Mr. Hale's tort claims under the doctrine of sovereign immunity. (CR 1:68). The City's Motion for Partial Summary Judgment was granted on January 6, 2015. (CR 1:119). The City then filed a second Motion for Summary Judgment on January 16, 2015 seeking dismissal of Mr. Hale's remaining claims, also under the doctrine of sovereign immunity. (CR 1:120). The City's Second Motion for Summary Judgment was granted on February 12, 2015. (CR 1:192). An Order of Dismissal dismissing Plaintiff's claims for declaratory relief was entered on February 27, 2015 and is a final and appealable order. (CR 1:197). Mr. Hale filed its Notice of Appeal on March 26, 2015. (CR 1:200).

# ISSUES PRESENTED FOR REVIEW

I.  The Trial Court committed reversible error by holding that the City has sovereign immune from suit for claim arising out of its proprietary functions.

II.  The Trial Court committed reversible error by failing to find that the proprietary-governmental dichotomy applies to Appellant's contractual and quasi-contractual claims.

III.  The Trial Court committed reversible error by failing to find that the City was performing proprietary functions, and thus, a Legislative wavier of immunity is not necessary because no immunity exists.

IV.  The Trial Court committed reversible error by failing to find that the City was performing proprietary functions, and thus, the Texas Tort Claims Act does not apply.

V.  Alternatively, even if the Texas Tort Claims Act applies in the present case, the Trial Court committed reversible error by failing to find that the statute provides a limited waiver of immunity under the facts presented.

VI.  The Trial Court committed reversible by failing to allow Appellant the opportunity to conduct discovery and/or amend his counterclaims to affirmatively establish jurisdiction.

## STATEMENT OF JURISDICTION

The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from. Tex. R. App. Proc. 25.1(b).

# STATEMENT OF FACTS[1]

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS:

Plaintiff is the owner of a hangar on the grounds of the City of Bonham Airport (the "Hangar"). (CR 1:59). On or about June 18, 1984, Mr. Hale entered into a lease agreement with the City for the Hangar (the "Lease"). (CR 1:59; 12-13). The Lease, by its own terms, expired after five years. *Id*.

On or about December 8, 2013, the Hangar roof collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). (CR 1:59). The Hangar was used to conduct Mr. Hale's aircraft repair and maintenance business and to store multiple aircraft. (CR 1:59).

Prior to the Incident, Mr. Hale informed the City of the observed and deteriorating condition of the hangar. (CR 1:59). The City, specifically Mr. Ronnie Ford on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. (CR 1:59; RR 2:19). There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the Hangar would not have collapsed. (CR 1:59). Indeed, it was not until several hours later, after the City's failure to act that the Hangar collapsed. (CR 1:59). Such action represents an assumption of

---

[1] Mr. Hale's counterclaims were dismissed pursuant to what is essentially a Plea to the Jurisdiction. As a result, the merits of Mr. Hale's counterclaims were not reached by the trial court. No discovery was conducted during the trial court proceedings. In reviewing the plea to the jurisdiction, the court must take all factual allegations plead by Mr. Hale as true. *Cont. Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996).

1

complete command and control over the premises, to the complete and total exclusion of all other persons and entities. (CR 1:59). The City's failure to reasonably protect the Hangar from further collapse caused the damages incurred by Mr. Hale, at least in part. (CR 1:59).

Additionally, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to his personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling. (CR 1:59).

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use. (CR 1:59-60). This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to Mr. Hale. (CR 1:60). The City was aware of this condition, yet did nothing to make the premises safe. (CR 1:60).

## SUMMARY OF THE ARGUMENT

Mr. Hale brought several causes of action against the City in his Original Counterclaim, including tort claims, contractual claims and quasi-contractual claims. The trial court below improperly dismissed all of Mr. Hale's claims on the basis that the City was afforded sovereign immunity from Mr. Hale's claims. The conduct at issue in the present case is based on the City's proprietary functions, rather than governmental functions. As a result, the statutes relied upon by the City, including the Texas Tort Claims Act and Chapter 271 of the Texas Local Government Code, are inapplicable. The proprietary nature of the City's conduct takes Mr. Hale's claims outside the realm of the statutes relied upon by the City. In other words, a statutory waiver of sovereign immunity is not required under the facts of this case, because the City was never afforded immunity under the facts of this case.

The City, in conducting real estate operations of owning, managing, and leasing real property was performing proprietary functions. A municipality is not afforded the protection of sovereign immunity for matters arising from the performance of their proprietary functions. The governmental functions of a municipal corporation have been defined as those acts which are public in nature and performed by the municipality "as the agent of the State in furtherance of general law for the interest of the public at large." Proprietary functions, on the

3

other hand, are those functions performed by a city, in its discretion for its own advantage or emolument, primarily for the benefit of those within the corporate limit of the municipality.

Alternatively, Mr. Hale requested that the trial court allow sufficient opportunity for discovery and the opportunity to amend his counterclaims before ruling on the City's motions. Mr. Hale's request was denied by the trial court, which constitutes reversible error. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend.

Consequently, Mr. Hale respectfully requests that this Court find that the City was acting in a proprietary capacity, and as such, is not protected from suit by sovereign immunity. Mr. Hale further requests that that the orders of the trial court dismissing Mr. Hale's counterclaims be reversed and the case remanded to the trial court for a trial on the merits. Alternatively, or in addition, to the requested relief, Mr. Hale respectfully requests that the case be remanded to the trial court for discovery and to allow Mr. Hale an opportunity to amend his counterclaims to include additional facts to affirmatively demonstrate the trial court's jurisdiction.

## ARGUMENT

## STANDARD OF REVIEW

Both of the motions for summary judgment filed by the City are essentially pleas to the jurisdiction, claiming that Mr. Hale's claims are barred by sovereign immunity. A plea to the jurisdiction is the proper vehicle by which a party contests a trial court's authority to determine the subject matter of a cause of action. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). A governmental unit may properly challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction since absent the state's consent to suit a trial court has no subject matter jurisdiction. *Tex. Dep't. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

A trial court must not weigh the merits of the case, but instead consider only the pleadings and evidence pertinent to the jurisdictional question. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In doing so, the trial court must construe the pleadings liberally ***in favor of jurisdiction***, *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex. 1989) [emphasis added], and must take all factual allegations plead as true, unless the governmental unit pleads and proves that the allegations were fraudulently made in order to confer jurisdiction. *Cont. Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996). Only, if a party pleads facts that affirmatively demonstrate an absence of jurisdiction and such defect is

incurable, immediate dismissal of the case is proper. *Peek*, 779 S.W.2d at 804-805. However, if the pleadings are insufficient to demonstrate the court's jurisdiction, but do not affirmatively show incurable defects in jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend before dismissing. *Id*.

On appeal, the court reviews *de novo* the trial court's disposition of a plea to the jurisdiction. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, the appellate court considers the pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010). Construing the pleadings liberally in favor of the plaintiffs (here, Mr. Hale), the court looks to the pleaders' intent and determine whether the pleaders have alleged facts affirmatively demonstrating the court's jurisdiction to entertain the matter. *Id*. When a plea to the jurisdiction challenges the existence of jurisdictional facts, the court considers whether evidence in the record raises a fact issue, and if it does, the jurisdictional issue must be resolved by the trier of fact. *Miranda*, 133 S.W.3d at 227-28. Conversely, the trial court must rule on the plea as a matter of law if the evidence is undisputed or fails to raise a fact question. *Id*. at 228; *Klumb v. Houston Mun. Emples. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015).

## I. THE CITY IS NOT IMMUNE FROM CLAIMS ARISING OUT OF ITS PROPRIETARY FUNCTIONS.

The City of Bonham is a home rule municipal corporation. As such it has broad powers of self-government. *City of Corpus Christi v. Continental Bus Systems, Inc.*, 445 S.W.2d 12, 16 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.). Municipal corporations exercise their broad powers through two different roles: proprietary and governmental. The governmental functions of a municipal corporation have been defined as those acts which are public in nature and performed by the municipality "as the agent of the State in furtherance of general law for the interest of the public at large." *City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887, 889 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.). Proprietary functions are those functions performed by a city, in its discretion, primarily for the benefit of those within the corporate limit of the municipality. *Id*.

Under Texas common law, determining whether a city is performed a proprietary or governmental function has generally been evaluated by examining whether the act performed by the city as the agent of the State in furtherance of general law for the interest of the public at large, or whether it is performed by the city, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for the use by the general public. *See City of Gladewater v.*

7

*Pike*, 727 S.W.2d 514, 519 (Tex. 1987); *Bailey v. City of Austin*, 972 S.W.2d 180, 192-93 (Tex. App.—Austin 1998, pet. denied). The key difference between a proprietary and governmental function is that the city functions in its governmental capacity when it performs functions mandated by the State. *Truong v. City of Houston*, 99 S.W.3d 204, 210 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Here, the City ***voluntarily*** engaged in the business of owning and leasing real estate in and around the Airport. (RR 2:11). This "real estate" aspect of the City is not a necessary component to the operation of the Airport and is not a function mandated by the State, but rather a separate and distinct endeavor, and thus, is purely and completely a proprietary function. (RR 2:11). The trial court's cumulative errors commenced with its failure to respect this basic attribution of what the City does in and around the Airport. The Lease Agreement in this case is particularly instructive in this regard in that Mr. Hale leased the property at issue directly from The City of Bonham, rather than the Airport itself (the City of Bonham Municipal Airport, also known as Jones Field). (CR 1:12-13).

Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of governmental immunity, proprietary functions have subjected municipal corporations ***to the same duties and liabilities as those incurred by private persons and corporations***. *See Turvey v. City of Houston*, 602 S.W.2d 517 (Tex. 1980) [emphasis added]. While the doctrine of

8

governmental immunity protects municipalities from being sued for matters arising from the performance of their governmental functions, ***no such protection exists for municipalities performing their proprietary functions***. *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 783 (Tex. App.—Texarkana 2004, pet. denied) [emphasis added].

Over 125 years ago, the Supreme Court of Texas first considered the extent to which governmental immunity applies to municipalities. *City of Galveston v. Posnainsky*, 62 Tex. 118 (1884). In *Posnainsky*, a father sued a municipality for injuries resulting from his minor child's fall into an uncovered drain on a public street. *Id.* at 122-23. The Court held that because the municipality constructed and maintained the streets for its "own advantage or emolument," it was not immune from suit for negligently maintaining those streets. *Id.* at 131. When a municipality "exercises powers exclusively public in their character, forced upon it without its consent, simply because that state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against" the municipality unless the state has waived immunity from suit. *Id.* at 125. However, when municipalities "exercise power not of this character, voluntarily assumed—powers intended for the private exchange and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual

damage to which an individual or private corporation" would be held. *Id*.; *see also*

*City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803, 808-09

(Tex.App.—Austin 2013, pet. dism'd).

Here, the City's ownership, lease, and management of real estate properties on the Airport property are voluntarily assumed powers intended for the private exchange and benefit of its inhabitants. (CR 2:11). Thus, these real estate functions of the City are proprietary in nature and not subject to sovereign immunity.

## II. THE PROPRIETARY-GOVERNMENTAL DICHOTOMY SHOULD BE APPLIED TO MR. HALE'S CONTRACTUAL AND QUASI-CONTRACTUAL CLAIMS

Contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals. *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986). Consequently, in the present case, because the City was engaged in a proprietary function in the ownership and leasing of real estate, governmental immunity does not apply to Mr. Hale's contractual and quasi-contractual claims against the City.

The Supreme Court of Texas, in *Tooke v. City of Mexia*, recognized that a municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its government functions. 197 S.W.3d 325, 343 (Tex. 2006). Additionally, while the Court indicated that they have not held that the same distinction determines

10

whether immunity was waived in suits involving breach of contract claims, the Court also did not indicate that the distinction ***does not*** apply. *Id*. Rather, the Court determined that it was not necessary to make that determination based on the facts presented in *Tooke*. Indeed, the Court held that, "even if the City were not immune from suit for breach of a contract whose subject lies within its proprietary functions, the Tooke's contract does not qualify." *Id*. at 344. This leaves the door open for the Court to make that determination at a later date.

The Texas Tort Claims Act was enacted in 1985, well before the decision was entered in *Tooke*. Since the enactment of Section 271.152 of the Local Government Code in 2005, the Supreme Court has not yet revisited whether or not the proprietary-governmental dichotomy applicable in tort cases is also applicable in breach of contract cases. While the Fourth Court of Appeals in San Antonio has held that this distinction does not apply in contract cases, the decisions of that Court are persuasive only and certainly not binding on the present court. *See City of San Antonio v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex.App.—San Antonio 2012, pet. denied). Conversely, the majority of appellate courts continue to apply the proprietary-governmental dichotomy to contract claims. *See, e.g., East Houston Estate Apartments, LLC v. City of Houston*, 294 S.W.3d 723, 731-32 (Tex.App.—Houston [1st Dist.] 2009, no pet.); *City of Georgetown*, 413 S.W.3d at 811.

11

Absent a decision to the contrary by the Supreme Court of Texas, there is no authority mandating that this Court find that the proprietary-governmental function distinction does not apply in the present case. Indeed, the *Gates* case, whereby the Supreme Court of Texas recognized that contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals, *Gates*, 704 S.W.2d at 739, has not been overturned and still constitutes good law. The Third Court of Appeals held, post-*Tooke*, that in the absence of a definitive answer from the Supreme Court, the Court would rely on its own precedent, as well as the nearly unanimous opinions of its sister courts, to conclude that the proprietary-governmental dichotomy applies to contract claims. *City of Georgetown*, 413 S.W.3d at 810-11. While *Tooke's* citation to *Gates* could be read to mean that *Gates* did not expressly hold that the proprietary-governmental dichotomy applies to contract claims, *Tooke* did not change the common law or somehow call the holding of *Gates* into question. *Id*. at 812. Mr. Hale urges the Court in the present case to adopt the holding in the *City of Georgetown*, finding that the proprietary-governmental dichotomy applies in contractual and quasi-contractual claims against a municipality. Not only is the City subject to liability for its actions as a landlord generally, even the early state of the record in this case reveals that it ejected Mr. Hale from his property after its condition had been brought to the City's attention, and then the City, after

12

assuming complete control over the premises, stood idly by and watched as the Quonset hut type of hangar that it leased to Mr. Hale collapse, destroying over a hundred thousand dollars of aircraft and aircraft related equipment and tooling. (CR 1:59). The City then expects to escape all liability by asserting judicial immunity for such careless and reckless acts. The law cannot allow such an improvident and bizarre result as what the City seeks.

Prior to *Tooke*, the appellate courts unanimously applied the proprietary-governmental dichotomy to contract claims. *City of Georgetown*, 413 S.W.3d at 811 (*internal citations omitted*). Following *Tooke*, several appellate courts have assumed without deciding that the dichotomy continues to apply to contract claims. At least one appellate court, the Thirteenth Court of Appels, has continued to expressly apply the proprietary-governmental dichotomy to contract claims post-*Tooke*. *See Casso v. City of McAllen*, No. 13-08-00618, 2009 Tex.App. LEXIS 2049, 2009 WL 781863, at *5-7 (Tex.App.—Corpus Christi Mar. 26, 2009, pet. denied) mem. op.). As noted in the *City of Georgetown*, these opinions of the various courts of appeals did not engage in any substantial analysis as to why the dichotomy should be applied, perhaps because no such analysis was necessary. *City of Georgetown*, 413 S.W.3d at 811. While *Tooke* brought the issue into question, it did not suggest any principled reason why the proprietary-governmental dichotomy should apply to tort claims, but not contract claims. *Id*.;

13

*see also Tooke*, 197 S.W.3d at 343-44. This dichotomy exists because when a municipality does not act on behalf of the state, it does not have the state's immunity. *City of Georgetown*, 413 S.W.3d at 811. The underlying rationale is the relationship, or lack thereof, between the municipality and the state, not the relationship between the municipality and the party bringing suit. *Id.*; *Posnainsky*, 62 Tex. at 126-28. In the present case, the City's real estate functions in owning and leasing real property have no relationship with the state and are thus, proprietary in nature.

The foundation of a bailment claim lies in contract. *Sanroc Co. Int'l v. Roadrunner Transp., Inc.*, 596 S.W.2d 320, 322 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ). A bailment contract may be express or implied. *State v. $281,420.00 in U.S. Currency*, 312 S.W.3d 547, 551 (Tex. 2010). Consequently, the proprietary-governmental dichotomy should be applied to Mr. Hale's claim for bailment, as well as his quasi-contractual claims for promissory estoppel and unjust enrichment.

The operation of an airport consists of the operation and management of the runways and related facilities, with or without an air traffic control tower. (RR 2:11). The additional endeavor of real estate ownership, leasing and management is not a necessary function of an airport, nor is it a function mandated by the State in the operation of an airport. (RR 2:11). The real estate functions were undertaken by

the City voluntarily, and are separate and distinct from the operation of the Airport itself. (RR 2:11). Like the municipality in *Posnainsky*, the City in the present case owned and maintained the real estate properties for its "own advantage or emolument." Thus, it is not immune from suit for negligently maintaining those properties. *See Posnainsky*, 62 Tex. at 131. The real estate functions of the City are exactly the very definition of proprietary functions. The real estate functions constitute an "exercise of power . . . voluntarily assumed—powers intended for the private exchange and benefit of the locality and its inhabitants," as such there is no sufficient reason why it should be relieved from liability to suit and measure of actual damage to which an individual or private corporation would be held. *Id*.; *see also City of Georgetown*, 413 S.W.3d at 808-09.

Because the City was engaged in a proprietary function in the ownership and leasing of real estate, sovereign immunity does not apply to Mr. Hale's claims for breach of contract, bailment, unjust enrichment and promissory estoppel. Consequently, the trial court committed reversible error in finding that immunity does apply in the present case. As a result, this Court should reverse the trial court's decision and remand the case for a trial on the merits.

### III. A LEGISLATIVE WAIVER OF IMMUNITY IS NOT NECESSARY WHEN NO IMMUNITY EXISTS

When the City entered into the Lease with Mr. Hale, the City was engaged in a proprietary function, and thus no immunity against Mr. Hale's contractual and

15

quasi-contractual claims exists. In 2005, the Legislature enacted Subchapter I of Chapter 271 of the Texas Local Government Code "to loosen the immunity bar" by waiving immunity to suit for specific claims arising under written contracts with governmental entities. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320, 326 (Tex. 2006). Section 271.152's waiver of immunity was intended to ***broaden, not narrow***, the scope of contract claims that could be filed against cities. For the specific types of contracts covered by Chapter 271, the waiver of immunity applies regardless of whether the municipality is engaged in a proprietary or governmental function. However, the statutory waiver scheme of Chapter 271 is inapplicable in contract cases in which no immunity exists in the first place, i.e., when a city engages in a proprietary function.

Chapter 271 provides that a governmental entity authorized to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter. Tex. Loc. Gov't Code §271.152. A "contract subject to this subchapter" is defined as: a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity. Tex. Loc. Gov't Code §271.151(2)(A).

16

It does not logically follow that a statute intended to broaden the scope of contract claims that can be brought against a municipality, would at the same time, completely abolish an entire class of claims which have never been subject to immunity. (RR 2:16-17). Prior to *Tooke*, the appellate courts unanimously held that immunity does not apply to contract claims involving a municipality's proprietary function. *City of Georgetown*, 413 S.W.3d at 811 (*internal citations omitted*). *Tooke* does not change that precedent. Rather, *Tooke*, by its own terms, assumed without deciding that the proprietary-governmental dichotomy applied to contract claims and therefore, did not overrule any prior precedent. *Id.* at 812; *Tooke*, 197 S.W.3d at 343. The underlying analysis in *Tooke* primarily considered whether the phrase "plead and be impleaded" within the local government code was a clear and unambiguous waiver of sovereign immunity. *Tooke*, 197 S.W.3d at 343. Indeed, the proprietary-governmental dichotomy concerns whether a municipality has immunity in the first place, not whether it has been waived. *City of Georgetown*, 413 S.W.3d at 812. Consequently, *Tooke's* analysis of waiver of immunity has little bearing on the proprietary-governmental dichotomy, and the more relevant precedents are those cases addressing whether governmental immunity exists in the first instance. *Id.*; *see e.g., City of El Paso v. Heinrich*, 284 S.W.3d 366, 371-72 (Tex. 2009); *Nueces County v. San Patricio County*, 246 S.W.3d 651, 652-53 (Tex. 2008).

17

In the present case, the City was engaged in a proprietary function in the ownership and leasing of real estate, and thus, immunity does not apply. (RR 2:11). Moreover, it was not necessary for the Legislature to provide a waiver of immunity for contract and/or quasi-contractual claims where the governmental unit is acting in a proprietary capacity, because there was no immunity to waive. (RR 2:16-17). Because the City was engaged in proprietary functions, i.e., the ownership and leasing of real estate, there is no immunity applicable to Mr. Hale's claims for breach of contract, bailment, unjust enrichment and promissory estoppel.

When Mr. Hale informed the City of the unreasonable and unsafe condition of the hangar, the City, specifically Mr. Ronnie Ford on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. (CR 1:59; RR 2:19). Not only did the City forbid Mr. Hale from taking any action to protect his property from the unreasonable risk of harm posed by the deteriorated roof, the City did absolutely nothing to reduce or eliminate the risk of harm to Mr. Hale. (CR 1:59). Mr. Hale was not afforded an opportunity to remove his aircraft and personal property from the hangar until the destruction of his personal property and work tools was essentially complete. (CR 1:59). The City assumed complete command and control over the property when they ejected Mr. Hale and all other occupants from the property. (CR 1:59). The City then barred Mr. Hale from re-entering the property for weeks, allowing not only aircraft, but

18

sensitive aircraft grade equipment and tools to be exposed to the elements, resulting in damage or a complete loss. (CR 1:59).

To allow the City to avoid liability for the egregious conduct demonstrated in the present case goes against the spirit and intent of the doctrine of governmental immunity. A City should not be allowed to voluntarily take on proprietary functions, operate with conscious indifference to the rights, safety, or welfare of others, and then escape all responsibility and liability due to its tenants (and the public) under the doctrine of immunity. Indeed, the doctrine of sovereign immunity does not give the City, or any other governmental unit, a "free pass" to ignore its duties and obligations under the law and escape all responsibility for its actions. Consequently, the trial court's application of sovereign immunity to Mr. Hale's claims should be reversed and remanded for a trial on the merits.

## IV. BECAUSE THE CITY WAS ENGAGED IN A PROPRIETARY FUNCTION, THE TEXAS TORT CLAIMS ACT DOES NOT APPLY.

Sovereign immunity protects the State, its agencies and officials, and political subdivisions of the State from suit, unless immunity from suit has been waived. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). The sovereign immunity of the State inures to the benefit of a municipality insofar as the municipality engages in the exercise of governmental functions, except when that immunity has been waived. *See Fort Worth Indep. Sch.*

19

*Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000); *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex. 1997); *see also City of Houston v. Rushing*, 39 S.W.3d 685, 686 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (stating, "The City of Houston, as a home-rule municipality, is generally immune from both suit and liability in its governmental functions.").

The Texas Tort Claims Act ("TCA") establishes certain waivers of governmental immunity. *Likes*, 962 S.W.2d at 494. The entity remains immune unless waived by the TCA. *Miranda*, 133 S.W.3d at 225. If the City was performing a proprietary function, however, the TCA does not apply. *See City of Corpus Christi v. Absolute Industries*, 120 S.W.3d 1, 4 (Tex.App.—Corpus Christi 2001, pet. denied); *City of El Paso v. Morales*, No. 08-02-00484-CV, 2004 Tex. App. LEXIS 7806, *26-27 (Tex. App.—El Paso Aug. 20, 2004, pet. denied). When a municipality commits a tort while engaged in proprietary functions, it is liable to the same extent as a private entity or individual. *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 356 (Tex. App.—San Antonio 2000, pet. denied).

Under Section 101.0215 of the TCA, certain municipal functions are defined as governmental and others as proprietary. *See* Tex. Civ. Prac. & Rem. Code §101.0215. The Texas legislature has defined governmental functions as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of

20

the general public . . . ." Tex. Civ. Prac. & Rem. Code §101.0215(a). Proprietary functions are "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality . . . ." Tex. Civ. Prac. & Rem. Code §101.0215(b); *see also Pike*, 727 S.W.2d at 519 (proprietary function is one performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for use by the general public). A municipality retains its immunity for activities which the legislature has defined as governmental, except to the extent immunity is waived by acts, omissions, and conditions as specified in the TCA. *See Williams v. City of Midland*, 932 S.W.2d 679, 682 (Tex.App.—El Paso 1996, no writ); *Morales*, 2004 Tex. App. LEXIS 7806 at *14-15.

Under Texas common law, determining whether a city is performed a proprietary or governmental function has generally been evaluated by examining whether the act performed by the city as the agent of the State in furtherance of general law for the interest of the public at large, or whether it is performed by the city, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for the use by the general public. *See Pike*, 727 S.W.2d at 519; *Bailey*, 972 S.W.2d at 192-93. The key difference between a proprietary and governmental function is that the city functions in its governmental capacity when it performs functions mandated by the State. *Truong*, 99 S.W.3d at 210.

21

In the present case, the City was engaged in a proprietary function in the ownership and leasing of real estate, and thus, immunity does not apply. (RR 2:11). Moreover, it was not necessary for the Legislature to provide a waiver of immunity for tort claims where the governmental unit is acting in a proprietary capacity, because there was no immunity to waive. (RR 2:16-17). Because the City was engaged in proprietary functions, i.e., the ownership and leasing of real estate, there is no immunity applicable to Mr. Hale's tort claims for negligence, gross negligence and premises defect.

Indeed, the operation of an airport consists of the operation and management of the runways and air traffic control tower. (RR 2:11). The additional endeavor of real estate ownership, leasing and management is not a necessary function of an airport, nor is it a function mandated by the State in the operation of an airport. (RR 2:11). The real estate functions were undertaken by the City voluntarily, and are separate and distinct from the operation of the Airport itself. (RR 2:11). The Lease Agreement in this case is particularly instructive in this regard in that Mr. Hale leased the property at issue directly from The City of Bonham, rather than the Airport itself (The City of Bonham Municipal Airport). (CR 1:12-13).

Like the municipality in *Posnainsky*, the City in the present case owned and maintained the real estate properties for its "own advantage or emolument." Thus, it is not immune from suit for negligently maintaining those properties. *See*

22

*Posnainsky*, 62 Tex. at 131. There is nothing about the City's real estate endeavors that constitute "functions mandated by the State." *See Truong*, 99 S.W.3d at 210.

When Mr. Hale informed the City of the unreasonable and unsafe condition of the hangar, the City, specifically Mr. Ronnie Ford on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. (CR 1:59; RR 2:19). Not only did the City prevent Mr. Hale from taking any action to protect his property from the unreasonable risk of harm posed by the deteriorated roof, the City did absolutely nothing to reduce or eliminate the risk of harm to Mr. Hale. (CR 1:59). The City assumed complete command and control over the property when they ejected Mr. Hale and all other occupants from the property. (CR 1:59). The City then barred Mr. Hale from re-entering the property for weeks, allowing all sorts of aircraft and aircraft grade equipment and tools to be exposed to the elements, either damaging it or losing it completely. (CR 1:59).

The City must not be permitted to hide behind the veil of sovereign immunity to escape liability for the egregious conduct presented in this case. The City, in taking on the real estate function of owning, managing and leasing real estate property for public use, has a responsibility to maintain those properties in a good and habitable condition. The City, here, seeks to avoid that responsibility simply because they are a municipality – the safety and welfare of its citizens be

23

damned. In essence, the City claims that it does not matter how atrocious its conduct is, because it is untouchable. Such an argument goes against the very spirit and intent of the Texas Tort Claims Act, as well as the entire basis for a waiver of immunity.

Consequently, this Court should find that the City was engaged in a proprietary function in owning, managing, and leasing real estate to the public. As a result of that proprietary function, the City owed a duty of care and should be held accountable for a breach of that duty, just as an individual or private corporation would be under the facts of this case. Because the City was engaged in a proprietary function, the Texas Tort Claims Act does not apply and there is no sovereign immunity in this case. Thus, the decision of the trial court should be reversed and the case remanded for a trial on the merits.

V. **ALTERNATIVELY, EVEN IF THE TEXAS TORT CLAIMS ACT APPLIES TO THE PRESENT CASE, THE STATUTE PROVIDES A LIMITED WAIVER OF IMMUNITY UNDER THE FACTS OF THE PRESENT CASE.**

Under the TCA, a municipality is liable for damages arising under certain specified governmental functions, including airports, including when used for space flight activities as defined by Section 100A.001. Tex. Civ. Prac. & Rem. Code § 101.0215(a). Moreover, the TCA states that the proprietary functions of a municipality do not include those governmental activities listed under Subsection (a). Tex. Civ. Prac. & Rem. Code § 101.0215(c). Section 101.0215 lists numerous

24

functions of a city that are designated as governmental. Some courts have held that all activities associated with the operation of one of the government functions listed in section 101.0215(a) are governmental and cannot be considered proprietary, regardless of the city's motive for engaging in the activity. *See e.g., Tex. River Barges*, 21 S.W.3d at 356-57) (city's removal of barge company from marina is included within government function of operating a marina and park even if removal was motivated by desire to protect city's profit by exclusive contract with another barge company); *City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392, 395 (Tex. App.—Dallas 2002, pet. filed) (marking the location of water main is encompassed by government function of "waterworks" and water services). However, those cases are distinguishable in that the real estate function of the City in the present case is separate and distinct from the operation of the Airport. In fact, the Lease at issue in this case was entered by the City of Bonham itself, rather than with the actual Airport. (CR 1:12-13). Indeed, the only necessity to the operation of an airport is a runway and an air traffic control tower. There is no mandate from the State, nor the Federal Aviation Administration, requiring the owners and/or operators of airports own and/or lease real estate. Thus, the City's real estate functions are separate and distinct from its airport operations and are proprietary in nature.

25

The Tort Claims Act provides a limited waiver of immunity for injuries caused by (1) use of publicly owned automobiles, (2) ***premises defects***, and (3) injuries arising out of conditions or use of property. *Miranda*, 133 S.W.3d 217, 225 (Tex. 2004) [emphasis added]; *see also* Tex. Civ. Prac. & Rem. Code § 101.021. The TCA also waives immunity from suit for all claims for which it waives liability. *See id*. at § 101.025; *Morales*, 2004 Tex. App. LEXIS 7806 at \*14-15. Liability for premises defects is implied under Section 101.021(2) because a premises defect arises from a condition existing on real property. *City of Midland v. Sullivan*, 33 S.W.3d 1, 6 (Tex.App.—El Paso 2000, pet. dism'd w.o.j.); *Lamar Univ. v. Doe*, 971 S.W.2d 191, 195 (Tex.App.—Beaumont 1998, no pet.); *Perez v. City of Dallas*, 180 S.W.3d 906, 910 (Tex.App.—Dallas 2005, no pet.).

If a claim arises from a premise defect, the governmental unit generally owes the claimant the same duty that a private person owes to a licensee on private property. *See* Tex. Civ. Prac. & Rem. Code § 101.022(a); *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992); *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974). However, the governmental entity owes the claimant the duty owed to an ***invitee***, if the claimant pays for the use of the premises, as is the case here. *See Payne*, 838 S.W.2d at 237; *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 69-70 (Tex.App.—Houston [1st Dist.] 2009, pet. denied). If a plaintiff is an invitee, an owner is required to use ordinary care to reduce or eliminate an unreasonable risk

26

of harm created by a premises condition of which the owner is or reasonably should be aware. *Payne*, 838 S.W.2d at 237; *City of Galveston v. Albright*, No. 14-04-00072-CV, 2004 Tex. App. LEXIS 9693, *8-9 (Tex.App.—Houston [14th Dist.] Nov. 2, 2004, no pet.). In other words, the premises owner or occupier has a duty to keep the premises in a reasonably safe condition and to inspect the premises to discover any latent defects and to make safe any defect or give adequate warning. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983); *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex. 1972). An invitee need only prove that the owner or occupier knew or should have known of the condition. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 910 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *City of Houston v. Cogburn*, No. 01-11-00318-CV, 2013 Tex. App. LEXIS 2827, *8 (Tex. App.—Houston [1st Dist.] Mar. 19, 2013, no pet.). Consequently, the City had a duty to keep the leased property in a reasonably safe condition, and to inspect the property for defects—a duty it failed to meet.

In a premises liability case, the plaintiff must establish (1) a legal duty owed to the plaintiff, (2) breach of that duty, and (3) damages (4) proximately caused by the breach. *See Perez v. DNT Global Star, L.L.C.*, 339 S.W.3d 692, 700 (Tex.App.—Houston [1st Dist.] 2011, no pet.). As with any other negligence action, a defendant in a premises liability case is liable only to the extent it owes

27

the plaintiff a legal duty. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008). As a rule, to prevail on a premises liability claim, a plaintiff must prove that the defendant possessed—that is, owned, occupied, or controlled—the premises. *See Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999). Moreover, an invitee must establish the following elements to prevail on his premises liability claim: (1) the premise owner or occupier had actual or constructive knowledge of a condition; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the plaintiff's injury. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 644 (Tex.App.—Houston [1st Dist.] 2005, pet. denied).

In the case of a premises liability claim, to establish a waiver of immunity a plaintiff must comply with both §101.021 and §101.022(a). *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), 101.022(a); *see e.g. Tennison*, 509 S.W.2d at 561; *City of Del Rio v. Felton*, No. 04-06-00091-CV, 2007 Tex. App. LEXIS 660, *8 (Tex.App.—San Antonio 2007, no pet.). Under Section 101.021(a), a governmental unit is liable for damages proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if (a) the damages arise from the operation or use of a motor vehicle or equipment;

28

and (b) the employee would be personally liable to the claimant according to Texas law. Tex. Civ. Prac. & Rem. Code §101.021(a). A governmental unit is also liable for damages caused by a condition or use of tangible personal or real property *if the governmental unit would, were it a private person, be liable to the claimant* according to Texas law. Tex. Civ. Prac. & Rem. Code §101.021(b) [emphasis added]. Here, provided all elements of the claim were established at trial on the merits, the City would absolutely be liable to Mr. Hale under the facts of this case.

Mr. Hale's status as an invitee carries with it a greater duty of care by the City. Indeed, the City is required to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware. *Payne*, 838 S.W.2d at 237. When Mr. Hale informed the City of the unreasonable unsafe condition of the hangar, the City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. (CR 1:59). The City forbid Mr. Hale from taking any action to protect his property from the unreasonable risk of harm posed by the deteriorated roof, and did absolutely nothing to reduce or eliminate the risk of harm to Mr. Hale. (CR 1:59). The City assumed complete command and control over the property when they ejected Mr. Hale and all other occupants from the property. (CR 1:59). The City then barred Mr. Hale from re-entering the property for weeks, allowing the sensitive aircraft

29

grade equipment and tools to be exposed to the elements, resulting in damage or total loss of the equipment. (CR 1:59). To allow the City to avoid liability for such egregious conduct goes against the spirit and intent of the Texas Tort Claims Act. In other words, a City should not be allowed to voluntarily take on proprietary functions, such as the management and leasing of property, operate with conscious indifference to the rights, safety, or welfare of others, and then escape all responsibility and liability for its responsibilities and duties to its tenants (and the public). Consequently, the decision of the trial court should be reversed in all respects.

## VI. THE TRIAL COURT'S FAILURE TO ALLOW MR. HALE THE OPPORTUNITY TO CONDUCT JURISDICTIONAL DISCOVERY AND AMEND HIS COUNTERCLAIM IS REVERSIBLE ERROR.

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. DOT v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999); *see also Hosner v. De Young*, 1 Tex. 764, 769 (Tex. 1847) (recognizing as appropriate procedure the challenge of a court's subject matter jurisdiction through a plea to the jurisdiction). The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Austin & N.W.R. Co. v. Cluck*, 97 Tex. 172, 77 S.W. 403, 405 (Tex. 1903) ("There can be no doubt that the courts of Texas must look to the Constitution of this state, the

30

enactments of the Legislature, and the common law for their authority to proceed . . . .").

Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo*. Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *See Gates v. Pitts*, 291 S.W. 948, 949 (Tex. Civ. App.-Amarillo 1927, no writ); *Gentry v. Bowser*, 21 S.W. 569, 570 (Tex. Civ. App.—Fort Worth 1893, no writ); *see also Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 n.3 (1st Cir. 2001) (observing that in certain situations, the predicate facts can be so inextricably linked to the merits of the controversy that the district court may "defer resolution of the jurisdictional issue until the time of trial").

When a plea to the jurisdiction challenges the pleadings, court must determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Courts construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings do not contain

31

sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.*

In the present case, Mr. Hale requested additional time to conduct discovery to determine the full extent of the wrongs committed by the City and the opportunity to amend his counterclaims to include additional facts to affirmatively demonstrate the trial court's jurisdiction. Mr. Hale's request was improperly denied by the trial court. (RR 1:23).

Under the facts as presented, the City's actions may give rise to intentional tort claims, for which sovereign immunity does not attach. Additionally, Mr. Hale believes the facts of this case may support a claim for a special defect, for which a waiver of immunity has been provided by the Texas Tort Claims Act, particularly in light of Mr. Hale's status as an invitee upon the property at issue. No pointed discovery was conducted in the present case.

Indeed, immunity is waived for the duty to warn of special defects. *See State v. Woollesen*, 93 S.W.3d 910, 913 (Tex. App.—Austin 2002, no pet.). The Legislature does not define special defect but likens it to conditions "such as

32

excavations or obstructions on highways, roads, or streets." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *see also County of Harris v. Eaton*, 573 S.W.2d 177, 178-80 (Tex. 1978) (construing "special defect" as including those defects of the same kind or class as those expressly mentioned in the statute). In *Denton County v. Beynon*, the court found that conditions can be special defects "only if they pose a threat to the ordinary users of a particular roadway." 283 S.W.3d 329, 331 (Tex. 2009) (*citing Payne*, 838 S.W.2d at 238 n.3). Whether a condition is a special defect is a question of law. *City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999). While special defect claims have typically been brought in connection with roadway defects, neither the Legislature, nor the Supreme Court of Texas has expressly limited special defect claims as such.

The hangar leased by Mr. Hale was used to house Mr. Hale's aircraft maintenance business. (CR 1:59). Consequently, the property was open to the general public – both inhabitants of the City of Bonham and those merely passing through by virtue of their use of the Airport and Mr. Hale's business. The inherently unsafe structure of the building presented an unexpected and unusual danger to the ordinary users of the property and presented an unnecessary risk to anyone who entered the property.

The general elements of a claim based on a special defect are:(1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner

33

knew or should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) the owner's failure was a proximate cause of injury to the invitee. *Payne*, 838 S.W.2d at 237; *City of El Paso v. Chacon*, 148 S.W.3d 417, 425 (Tex. App.—El Paso 2004, pet. denied). Upon information and belief, the facts of the present case support a claim for a special defect.

Following the Incident giving rise to the present dispute, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use. (CR 1:59-60). This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to Mr. Hale. (CR 1:60). The City was aware of this condition, certainly well in advance of a slow-motion collapse that transpired over days instead of hours, yet did nothing to make the premises safe. (CR 1:60). Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes. (CR 1:60).

Consequently, the trial court's denial of the opportunity to conduct discovery prior to its dismissal of Mr. Hale's counterclaims and the denial of the opportunity to amend his pleadings constitutes reversible error. Thus, as an alternative (or

34

addition) to the relief requested herein, Mr. Hale respectfully requests that the case be remanded to the trial court to allow Mr. Hale the opportunity to conduct discovery and amend his counterclaims.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, and as a result of the foregoing, Mr. Hale respectfully requests that this Court find that the City was acting in a proprietary capacity, and as such, is not protected from suit by sovereign immunity. Mr. Hale further requests that that the orders of the trial court dismissing Mr. Hale's counterclaims be reversed and the case remanded to the trial court for a trial on the merits. Alternatively, or in addition, to the requested relief, Mr. Hale respectfully requests that the case be remanded to the trial court for discovery and to allow Mr. Hale an opportunity to amend his counterclaims to include additional facts to affirmatively demonstrate the trial court's jurisdiction. Mr. Hale further requests all such other and further relief, general or special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

**COATS &EVANS, P.C.**

By: /s/ ***Gary L. Evans***

Gary Linn Evans
State Bar No. 00795338
E-mail: evans@texasaviationlaw.com
George Andrew Coats
State Bar No. 00783846
E-mail: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, Texas 77393-0246
Telephone: (281) 367-7732
Facsimile: (281 367-8003

**ATTORNEYS FOR APPELLANT
SIDNEY B. HALE, JR.**

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 8,611 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ ***Gary L. Evans***

Gary L. Evans

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 6th day of July, 2015.

*/s/ Gary L. Evans*

Gary L. Evans

Mr. Christopher S. Kilgore

*Via Electronic Filing and/or*

Dottie Sheffield

*Facsimile No. 972-532-6496*

**HELMS & KILGORE, PLLC**
2201 Main Street, Suite 212
Dallas, Texas 75201
Telephone: 972-532-6484
Facsimile: 972-532-6496

**ATTORNEYS FOR PLAINTIFF**
**CITY OF BONHAM**

# APPENDIX

A1.  Order of January 6, 2015 Granting Plaintiff's Motion for Partial Summary Judgment (CR 1:119).

A2.  Order of February 12, 2015 Granting Plaintiff's Motion for Summary Judgment (CR 1:192).

A3.  Order of Dismissal dated February 27, 2015 (CR 1:197).

A4.  Texas Tort Claims Act, applicable provisions.

A5.  Subchapter I, Chapter 271, Texas Local Government Code, applicable provisions.

A6.  *City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803 (Tex.App.—Austin 2013, pet. dism'd).

A7.  Plaintiff's First Amended Petition for Declaratory Judgment (CR 1:24).

A8.  Defendant's Verified Original Answer (CR 1:51).

A9.  Defendant's Original Counterclaim (CR 1:57).

A10. Plaintiff's Motion for Partial Summary Judgment (CR 1:68).

A11. Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (CR 1:107).

A12. Plaintiff's Motion for Summary Judgment (CR 1:120).

A13. Defendant's Response to Plaintiff's Motion for Summary Judgment (CR 1:172).

A14. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (CR 1:182).

A15. Defendant's Surreply to Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (CR 1:189).